THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES CHARLES, Defendant-Appellant.

First District (5th Division)   No. 1—87—3614

Opinion filed November 30, 1992.

Rita A. Fry, Public Defender, of Chicago (Evelyn G. Baniewicz, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and David Stabrawa, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GORDON delivered the opinion of the court:

A jury found defendant James Charles guilty of the attempted armed robbery and the murder of Willie Rodgers, and the armed robbery of DeWanda Rodgers. The trial court sentenced defendant to concurrent prison terms of 60 years for murder, 30 years for armed robbery and 15 years for attempted armed robbery. On appeal, defendant contends that the trial court erred in denying his motion *in limine* to exclude evidence of a pending attempted murder charge; that the State exercised its peremptory challenges in a discriminatory manner; that prosecutorial closing argument shifted the burden of proof; and that the sentence is excessive.

Prior to trial, defendant filed a motion *in limine* to bar the admission of evidence concerning a charge of attempted murder pending against defendant. The court denied the motion.

During *voir dire* the State exercised 7 out of 11 peremptory challenges against black individuals. Defendant moved for a mistrial based on discriminatory use of peremptory challenges, and the court denied the motion. The trial court considered the prosecutor's reasons for excluding six of the seven prospective black jurors; the prosecutor could not remember the reason for excluding the seventh venireperson. The court then denied defendant's motion.

At trial, DeWanda Rodgers, the victim's wife, testified for the State. On May 29, 1986, between 2:30 p.m. and 3 p.m., she was upstairs at her mother's home in Chicago with her sister, Edwina Cummings, and their children. DeWanda's husband, Willie Rodgers, was downstairs. She heard fighting downstairs and heard Willie calling for help from Edwina. DeWanda went downstairs, where she saw Willie holding defendant by the wrists. DeWanda did not know defendant, but knew that Willie's cousin was married to defendant's sister. Defendant was holding a small handgun and a shotgun and was demanding $105 from Willie. As DeWanda entered the room, the two men separated. Defendant sat down in a chair. Willie stepped through the room's doorway and picked up his wallet.

DeWanda testified further that Willie returned through the doorway, stood about six feet from defendant, and told defendant, "You move your m----- f----- feet" off the chair. Defendant "sat up and pulled the [shot]gun and shot" Willie. Defendant stood up, pointed the shotgun at DeWanda and demanded money. DeWanda picked up Willie's wallet and handed defendant the $32 that was in the wallet. Willie died at the hospital at 7:30 p.m. that evening. DeWanda denied later telling Willie's cousin that defendant only fired after Willie slapped his feet off the table.

Edwina Cummings testified similarly to DeWanda Rodgers. Cummings added that she knew defendant because defendant's sister was married to Willie's cousin. While the two men were arguing, Cummings telephoned the police. After defendant shot Willie, Cummings saw defendant leave in a blue car with a sunroof. When the police arrived, she gave them defendant's name, a description of defendant, and a description of his car. At a subsequent lineup which included defendant, Cummings did not identify him as the assailant because she was "shaken up" and "scared."

James Sanford, a salesman for Midwest Appliances, testified for the State that on May 24, 1986, he sold a stove and refrigerator to

defendant. On May 29, 1986, defendant entered the store between 2 p.m. and 2:30 p.m., carrying a shotgun. As he stood about 15 feet from Sanford, defendant raised the gun and shot Sanford in the stomach.

Officer Willie Anderson testified that on May 29, 1986, at 2:30 p.m., he and his partner responded to a radio call of shots fired at the appliance store. At the store, defendant was named as the assailant, and the police were given defendant's receipt for the appliances he had purchased. The receipt showed defendant's name and address. While proceeding to that address, 10 to 15 minutes after they received the Sanford shooting report, the officers heard a radio report of the Rodgers shooting. The officers stopped at the Rodgers home, where they received a description of defendant and of his blue Thunderbird. The police immediately proceeded to defendant's home, where they arrested defendant when he drove up in the Thunderbird. A search revealed a revolver and a live 12-gauge shotgun shell.

Dr. Shaku Teas, a medical examiner, testified for the State that she performed an autopsy on the decedent. The cause of death was a shotgun wound to the abdomen. The gun was fired at "fairly close range," somewhere between a few inches and 10 feet. There was also an abrasion near decedent's left eyelid and a bruise on the lower lip with a cut on the inside of the lip. These injuries were consistent with blunt trauma which might have occurred during a fight or from falling.

Officer Robert Smuda testified for the State that he was an evidence technician and that on May 29, 1986, he photographed the murder scene at the Rodgers home. Later, he was at the appliance store where he recovered a fired shotgun shell. He later performed a gunshot residue test on the shell.

Officer Raymond Lenz testified for the State that he was a crime laboratory technician. He performed a gunshot residue test on a shell, and the test was positive.

Daniel Friel, an assistant public defender, testified for the defense that in investigating the case in April 1987 he spoke with DeWanda Rodgers. DeWanda told him the fight between defendant and Willie lasted approximately 5 to 10 minutes.

Tyra Rodgers, Willie's second cousin, testified for defendant that he has known defendant for 10 or 12 years. Defendant and Willie had a "drug related" relationship. About six months before the shooting, defendant began giving Willie drugs to sell. On May 29, 1986, at the hospital where Willie had been taken, Tyra heard DeWanda say that

Willie was shot after he approached defendant and slapped his feet off a table.

James Schreiner, a Chicago police officer, testified for the defense that he interviewed DeWanda on the night of the murder. DeWanda told him the argument between the decedent and defendant was about "$105 that was—had something to do with the sale of leaf."

OPINION

Defendant contends that the prosecution exercised its peremptory challenges in a discriminatory manner in violation of *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712. Under *Batson*, the defendant must first state a *prima facie* case of purposeful discrimination. Once a *prima facie* case of discrimination has been established, the State then bears the burden of coming forward with its race-neutral explanations for the challenges. (*Batson*, 476 U.S. at 93-98, 90 L. Ed. 2d at 85-89, 106 S. Ct. at 1721-24.) The trial court must then make "a sincere and reasoned attempt to evaluate the prosecutor's explanation in light of the circumstances of the case." *People v. Fuentes* (1991), 54 Cal. 3d 707, 718, 818 P.2d 75, 81, 286 Cal. Rptr. 792, 798.

The trial court here did not make a finding regarding defendant's *prima facie* case; instead, it requested an explanation from the State for its reasons for the exclusions. However, once the State offers its reasons, the question of a *prima facie* case becomes moot. See *Hernandez v. New York* (1991), 500 U.S. 352, 358, 114 L. Ed. 2d 395, 405, 111 S. Ct. 1859, 1866; *People v. Walls* (1991), 220 Ill. App. 3d 564, 581 N.E.2d 264.

Moreover, the *prima facie* case can be established by showing that defendant belongs to a cognizable racial group; the State excused venirepersons of that race; and any other relevant circumstances. (*Batson*, 476 U.S. at 93-96, 90 L. Ed. 2d at 85-87, 106 S. Ct. at 1721-22.) Other relevant circumstances include whether there is a pattern of strikes; whether the group of venirepersons is otherwise heterogeneous, sharing race as their only common characteristic; and the prosecutor's statements during *voir dire*. *Batson*, 476 U.S. at 96-97, 90 L. Ed. 2d at 88, 106 S. Ct. at 1723; *People v. McDonald* (1988), 125 Ill. 2d 182, 196, 530 N.E.2d 1351.

In the present case, defendant is black. The final jury included four blacks and two Hispanics, along with one black alternate and one Asian alternate. While four black jurors were seated, this is not determinative, since a "single invidiously discriminatory governmental act" is sufficient to require a new trial. *Batson*, 476 U.S. at 95, 90 L. Ed.

2d at 87, 106 S. Ct. at 1722; see also *People v. McDonald*, 125 Ill. 2d at 200.

The State exercised 11 of its 14 peremptory challenges, seven of which were used to exclude black persons, and four of which were exercised against nonblacks. See *People v. Lockhart* (1990), 201 Ill. App. 3d 700, 710-11, 558 N.E.2d 1345 (five out of eight challenges exercised against blacks); *People v. Colley* (1988), 173 Ill. App. 3d 798, 806-07, 528 N.E.2d 223 (four out of eight challenges exercised against blacks); *People v. Seals* (1987), 153 Ill. App. 3d 417, 422, 505 N.E.2d 1107 (6 out of 10 challenges exercised against blacks).

In addition, the excluded black persons comprised a heterogeneous group. Their occupations varied, including a State inspector, a shipping and receiving clerk, a full-time student, several office workers and unemployed persons. Some of the venirepersons had grown children, some had school-age children, and some had no children.

We also note the prosecutor referred to one black venireperson, Mr. Zebedee M. Braithwaite, as "Zippodee Dooda."

"[PROSECUTOR]: *** [O]f those seven challenged, two of them were challenged by the defense. One being in the first panel, that being Mr. Brethweidic, Zippodee Dooda (phonetic spelling) Brethweidic.

[DEFENSE COUNSEL]: Judge, I would note for the record the statement made by the State's Attorney, calling the black gentleman Zippodee Dooda.

[PROSECUTOR]: That's his name.

THE COURT: Number one, I don't know. Well, go out and get the list now.

[PROSECUTOR]: Judge, I mispronounced the man's name.

[DEFENSE COUNSEL]: I would point out, Judge, for the record, that Zippodee Dooda refers to, I suppose, the ['Song of the South'] language of the old black man in that movie.

[PROSECUTOR]: Judge, that wasn't my intent. I mispronounced the man's name.

THE COURT: Be that as it may, you have stated it."

The court may consider such prosecutorial remarks in finding that a *prima facie* case was made. *People v. McDonald*, 125 Ill. 2d 182, 530 N.E.2d 1351.

■ Thus, notwithstanding the absence of a specific finding by the trial court, the record demonstrates that defendant established a *prima facie* case of discrimination.

■ We need not discuss the race-neutral reasons offered by the State for excusing six of the seven venirepersons, since we reverse

based solely on the State's failure to offer any explanation at all for its excusing one person, Colette Amico. As stated above, the "exclusion of even just one minority venireperson on account of race is unconstitutional and would require reversal of the conviction below." (*People v. Harris* (1989), 129 Ill. 2d 123, 175, 544 N.E.2d 357, 380.) In regard to Amico, the prosecutor simply stated: "I don't recall exactly for Miss [Amico]. If we could move on."

The State "cannot rebut a *prima facie* case of discrimination by stating that it does not know why it exercised its peremptory challenges." (*People v. Harris*, 129 Ill. 2d at 181; see also *People v. Drew* (1990), 201 Ill. App. 3d 271, 277, 559 N.E.2d 40.) Although the prosecutor's reason need not rise to the level of a challenge for cause (*Batson*, 476 U.S. at 97, 90 L. Ed. 2d at 88, 106 S. Ct. at 1723), the prosecutor may not "rebut the defendant's case merely by denying that he had a discriminatory motive or 'affirm[ing] [his] good faith in individual selections.' " (*Batson*, 476 U.S. at 98, 90 L. Ed. 2d at 88, 106 S. Ct. at 1723-24.) We are forced to conclude that the prosecutor's failure to recall his reason for using a peremptory challenge to strike this juror was insufficient to satisfy the *Batson* requirement that the "prosecutor *** must articulate a neutral explanation related to the particular case to be tried." *Batson*, 476 U.S. at 98, 90 L. Ed. 2d at 88, 106 S. Ct. at 1724.

The court in *Harrison v. Ryan* (E.D. Pa. April 12, 1990), No. 87—7439, ____ F. Supp. ____, *aff'd* (3d Cir. 1990), 909 F.2d 84, explained the reasoning for finding that a prosecutor's failure to recall his reason for using a peremptory challenge to strike a black juror does not meet the burden under *Batson*:

> "[The prosecution] seems to argue that 'not knowing' is the functional equivalent of providing a neutral reason, particularly when a period of years has elapsed. This court does not agree. There are no degrees of 'not knowing.' A statement by a prosecutor that he does not remember his reasons for exercising his peremptory strike can only be found to be a lapse in proof or gap in evidence. This court does not agree that the appropriate interpretation of *Batson* would be to find that a lapse in memory, even when several years have passed, is presumptively a neutral reason for exclusion of a black juror. Such a finding would thwart the constitutional principles expounded in *Batson*." *Harrison v. Ryan*, ____ F. Supp. at ____ (prosecution's motion for stay of order pending appeal denied).

Accord *Harrison v. Ryan* (3d Cir. 1990), 909 F.2d 84, 87-88 (prosecutor articulated race-neutral explanations for challenging five of six

venirepersons, but was not able to recall why he dismissed the sixth person; court granted defendant's writ of *habeas corpus* and ordered a new trial); *United States v. Cunningham* (M.D.N.C. 1988), 713 F. Supp. 165, 170-71 (prosecutor unable to recall specific reasons for challenging five black jurors; court found that "the only remedy [was to grant] a new trial," despite the fact that defendant had already completed his sentence, because "the effect of the lack of recollection is that the prosecutor has not rebutted the *prima facie* case as a matter of law"); *People v. Mitchell* (1992), 228 Ill. App. 3d 167, 172, 592 N.E.2d 175 (where prosecutor merely stated that defense counsel "knows our reason" for excusing one juror and trial judge stated "I think I know why," appellate court held that the remark did not constitute a race-neutral explanation, reversed the conviction, and remanded for a new trial); *People v. Blunt* (1991), 176 A.D.2d 741, 742, 574 N.Y.S.2d 812, 813 (prosecutor unable to recall specific reason for peremptorily striking all but 2 of 11 females; court orders new trial, since prosecutor's testimony "amounted to little more than a denial of discriminatory purpose and a general assertion of good faith"); *Brooks v. State* (Tex. Crim. App. 1991), 802 S.W.2d 692, 695 (prosecutor could not remember reasons for striking two of five black venirepersons; court had "no alternative" but to remand for a new trial since the State "utterly failed to demonstrate that it struck [these two] venirepersons *** for permissible race neutral justifications"); *Henry v. State* (Tex. App. Nov. 19, 1987), No. B14–84–592–CR, slip op. at 2 (prosecutor unable to recall why he struck two jurors; court has "no choice but to reverse and remand for a new trial"). See also *People v. Turner* (1986), 42 Cal. 3d 711, 725, 726 P.2d 102, 110, 230 Cal. Rptr. 656, 664 (prosecutor did not "remember exactly" why he excused a black woman, but thought it might have been due to "something in her work"; court found the explanation was "so lacking in content" as to amount to no explanation at all), quoted in *People v. Kindelan* (1991), 213 Ill. App. 3d 548, 556, 572 N.E.2d 1138. But see *State v. Bell* (Tenn. 1988), 745 S.W.2d 858, 867 (court remands for "a further [*Batson*] hearing" where the State would be "given an opportunity to explain its reasons for the racial exclusion," notwithstanding the fact that when the *Batson* issue was raised prior to trial, the prosecutor expressly stated that he could not recall why he had challenged one venireperson).

The State relies on *People v. Mack* (1989), 128 Ill. 2d 231, 243, 538 N.E.2d 1107, where the prosecutor was "unable to recall" during a *Batson* hearing on remand why he challenged one juror. The Illinois Supreme Court held, without addressing the prosecutor's failure to

recall a reason, that the trial court's finding of race-neutral reasons was not against the manifest weight of the evidence. We presume, however, that the court considered the fact that it was a pre-*Batson* trial, and consequently the prosecutor did not have the benefit of the Supreme Court's decision in *Batson* prior to jury selection.

For the reasons discussed above, therefore, we hold that the State failed to rebut the *prima facie* evidence of discrimination, and we reverse the conviction and remand for a new trial.

Ordinarily, the fact that we have found defendant is entitled to a new trial would alleviate our need to address any remaining issues raised by defendant. However, one other issue raised in defendant's appeal may reoccur on retrial, and, thus, we go on to discuss that issue.

Defendant contends that the trial court erred in admitting evidence of the attempted murder charge pending against defendant. The trial court denied defendant's pretrial motion *in limine* to exclude the evidence. The court later cautioned counsel not to "get involved in the nature and extent of the injuries that Mr. Sanford sustained as a result of this incident." The court instructed the jury at the close of the trial to consider the other crimes evidence for only two purposes—identification and intent.

The parties agree that there is no question regarding the identification of Rodgers' killer. The evidence established that the eyewitnesses knew defendant, who was related to Rodgers by marriage. Moreover, in his opening statement, defense counsel admitted that defendant shot Willie. The State recognizes this when, on appeal, it concedes in its brief that "identity was not in issue in this case." It maintains, however, that the Sanford shooting was relevant to prove defendant's intent in killing Rodgers. (See *People v. Tipton* (1990), 207 Ill. App. 3d 688, 696, 566 N.E.2d 352.) The State maintains that the evidence was properly admitted to establish "that defendant did not act in self-defense or by accident, but intended to shoot both Willie Rodgers and James Sanford."

Evidence of other crimes is not admissible for the purpose of showing that defendant has a general propensity to commit crimes. (*People v. Bean* (1990), 137 Ill. 2d 65, 107, 560 N.E.2d 258.) However, evidence of other crimes is admissible "if relevant to any other material issue." (*People v. Bean*, 137 Ill. 2d at 107.) For example, evidence of other crimes may be relevant to prove *modus operandi*, intent, identity, motive, or absence of mistake. (*People v. McKibbins* (1983), 96 Ill. 2d 176, 182, 449 N.E.2d 821; see generally 2 J. Wigmore, Evidence §304 (Chadbourn rev. ed. 1979).) It is within the sound discre-

tion of the trial court to determine whether evidence of other crimes is relevant to a material issue and whether the probative value of such evidence outweighs its prejudicial impact. *People v. Bean*, 137 Ill. 2d 65, 560 N.E.2d 258; *People v. Tipton*, 207 Ill. App. 3d 688, 566 N.E.2d 352.

Defendant argues that the Sanford shooting was not sufficiently similar to the Rodgers shooting to meet the threshold for admissibility because the only two details they had in common were that they both occurred on the afternoon of May 29, 1986, and both involved the use of a shotgun. In his brief, defendant states that the Sanford shooting was apparently "in some way related to the purchase of appliances some five days earlier," and there was no indication that robbery was the purpose, while, in contrast, the Rodgers shooting involved family members and apparently money owed for selling narcotics.

Generally, the two offenses must be similar enough that evidence of one offense tends to prove the defendant guilty of the other offense. (*People v. Bartall* (1983), 98 Ill. 2d 294, 456 N.E.2d 59; 2 J. Wigmore, Evidence §304, at 249 (Chadbourn rev. ed. 1979).) The degree of similarity required is less, however, where the other offense is introduced to prove criminal intent.

> "[T]he same degree of identity of the two offenses is not necessary when evidence of defendant's involvement in another offense is not offered to prove the commission of the crime charged, but is offered to prove the absence of an innocent frame of mind or the presence of criminal intent. In such a case, mere general areas of similarity will suffice. If these general similarities are shown, evidence of the defendant's involvement in another offense may be shown to establish the necessary criminal intent of the defendant in the offense charged." *People v. McKibbins*, 96 Ill. 2d at 185-86, 449 N.E.2d 821, citing 2 J. Wigmore, Evidence §§302, 304, at 241-47, 249-51 (Chadbourn rev. ed. 1979).

The State counters that the Sanford and Rodgers shootings were strongly similar because (1) both involved a shooting with a shotgun from a distance of 6 to 10 feet; (2) both occurred within 10 to 15 minutes of each other; and (3) both occurred in close geographical proximity to each other.

The trial court was free to weigh the unique facts here, where within minutes of the Sanford shooting, the police received a report of the Rodgers shooting, along with facts which immediately pointed to the same assailant for both crimes.

Time and place proximity, without more, is an insufficient basis for admission of other crimes evidence. (*People v. Lindgren* (1980), 79 Ill. 2d 129, 139, 402 N.E.2d 238; *People v. Lee* (1986), 151 Ill. App. 3d 510, 520, 502 N.E.2d 399.) Notably, however, the other crimes evidence was not admitted merely to show that defendant was in the area near the time of the Rodgers murder. Instead, the "evidence was used to prove the intent of defendant, the critical issue in this case." (*People v. Tiller* (1982), 94 Ill. 2d 303, 318, 447 N.E.2d 174.) The defense theory was that the Rodgers killing was committed in self-defense.

The reasoning behind the rule permitting other crimes evidence to show criminal intent, and a corresponding absence of an innocent frame of mind, is that showing criminal intent for one crime increases the probability that defendant also acted deliberately in the second crime. *People v. Brown* (1990), 199 Ill. App. 3d 860, 875, 557 N.E.2d 611; see also *Commonwealth v. Donahue* (1988), 519 Pa. 532, 543, 549 A.2d 121, 127 ("It is merely a matter of probabilities"), cited in *People v. Brown*, 199 Ill. App. 3d at 875. See generally 2 J. Wigmore, Evidence §302 (Chadbourn rev. ed. 1979).

Other crimes evidence, therefore, may be found relevant to defendant's intent to kill because it tends to negate inadvertence, accident or other forms of innocent intent. (See, *e.g., People v. Tucker* (1988), 176 Ill. App. 3d 209, 222, 530 N.E.2d 1079 (defendant claimed shooting was done in self-defense; that several hours prior to the shooting in question defendant placed a gun against another man's stomach, saying he was going to take care of a "war" between murder victim and another man; court held that the other crimes evidence was "particularly relevant to the issue of whether [defendant's] stated purpose in introducing the gun into the confrontation *** was as an instrument of protection or as an instrument of aggression").) While an innocent state of mind might be present in one instance, the more often it occurs with similar results, the less likely that it was without criminal intent to kill with legal justification. (See 2 J. Wigmore, Evidence §302, at 241 (Chadbourn rev. ed. 1979).) "Since it is the improbability of a like result being repeated by mere chance that carries probative weight, the essence of this probative effect is the likeness of the instance." 2 J. Wigmore, Evidence §302, at 245 (Chadbourn rev. ed. 1979). Accord *United States v. Weddell* (8th Cir. 1989), 890 F.2d 106 (evidence of defendant's general habit of using knives was admissible to rebut defendant's claim of self-defense in stabbing victim); *United States v. Fountain* (7th Cir. 1985), 768 F.2d 790 (evidence of defendant's prior use of knife in prison, including stabbing an inmate

57 times, was admissible to illuminate intent in defendant's stabbing and killing prison guards where defendant claimed self-defense); *Sadowski v. McCormick* (D. Mont. 1992), 785 F. Supp. 1417, 1420 ("evidence pertaining to his previous use of a weapon for the purpose of threatening or attacking another individual was legitimately admitted to rebut [defendant's] claimed purpose"); *State v. Sadowski* (1991), 247 Mont. 63, 72-73, 805 P.2d 537, 542-43 (other crimes evidence relevant to issue of whether defendant acted with criminal intent or in self-defense); *State v. Groves* (1989), 324 N.C. 360, 370, 378 S.E.2d 763, 770 (other crimes evidence relevant to negate self-defense); *State v. Harris* (La. 1980), 383 So. 2d 1, 8 ("While a single instance of a killing in self-defense may rationally and hypothetically be occasioned by an act in self-defense, four similar killings by the same person in an eight week span under peculiarly similar circumstances are not nearly as likely to be in self-defense"); *State v. Hereford* (La. App. 1987), 518 So. 2d 515, 517 (other crimes evidence relevant to rebut self-defense theory).

■ Thus, the relevance of the evidence derives from the logic that the mere fact that defendant fired a shotgun into one person's abdomen (and clearly not acting in self-defense) made it less likely that he fired the same shotgun into Rodgers' abdomen in self-defense 15 minutes later. This "matter of probabilities" is relevant evidence which the jury is permitted to weigh along with the other evidence.

■ Defendant argues that even if the evidence was admissible, the prejudicial effect outweighed the probative value. It is not always possible to limit the prejudicial effect of other crimes evidence. (See *People v. Tiller*, 94 Ill. 2d at 317 (holding no abuse of discretion in admitting "gory" evidence of other offense; "[t]he evidence was gruesome because the crime was gruesome").) In any event, the balancing of the prejudicial effect against the probative value is an exercise of discretion which will have to be made by the trial court at defendant's new trial.

Defendant argues further that, even if some evidence of other crimes could be properly admitted, the State admitted excessive details, conducting a mini-trial of the Sanford shooting. Our supreme court has cautioned against such a practice.

> "We agree that it was not necessary to conduct a mini-trial of the [subsequent] jewelry store robbery case in order to establish acts from which defendant's criminal intent with regard to the [charged offense of] robbery-murder could be inferred, and for the sake of economy of judicial time, we advise against such

detailed evidence of other offenses." *People v. McKibbins*, 96 Ill. 2d at 186-87.

See also *People v. Diaz* (1979), 78 Ill. App. 3d 277, 397 N.E.2d 148 (in reversing conviction for armed robbery of a tavern, court held that limited amount of evidence of subsequent robbery of two women was admissible to show circumstances of defendant's arrest and recovery of the gun used in both crimes, but detailed evidence of the robbery, including details of threats made to the women and their children, was error).

■ Sanford testified that he sold a stove to defendant on May 24, 1986, five days before Willie was killed. He was permitted to testify at length regarding the store's invoice system, the sale of appliances to defendant, and the delivery of the appliances to defendant's address. Sanford testified further regarding the May 29, 1986, shooting, when defendant walked into the appliance store and, without speaking, shot Sanford in the abdomen.

Two police officers testified about their investigation of the incident. Smuda testified that he recovered a shotgun shell from the appliance store and later performed a gunshot residue test on the shell. Anderson also testified about the expended shotgun shell and his search of the store. In addition, Lenz, a criminologist, testified regarding his analysis of the gunshot residue kit, concluding that it tested positive. The State also offered as exhibits the store's copy of the invoice; defendant's copy of the invoice; and the shotgun shell.

On retrial, the trial judge should therefore consider carefully whether all of these details are necessary in proving defendant's intent in shooting Rodgers. The extensive nature of the testimony and physical evidence may unnecessarily result in trying defendant for the attempted murder of Sanford. See *People v. Bartall*, 98 Ill. 2d at 315; *People v. Kimbrough* (1985), 138 Ill. App. 3d 481, 489, 485 N.E.2d 1292.

In view of our disposition of this case, we need not consider the remaining issues raised by defendant.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the cause is remanded for a new trial.

Reversed and remanded.

McNULTY, P.J., and MURRAY, J., concur.