THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MAURICE MAYS, Defendant-Appellant.

First District (1st Division)   No. 1—90—3203

Opinion filed September 20, 1993.

754

Rita A. Fry, Public Defender, of Chicago (Cary M. Berman, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Gael M. O'Brien, Special Assistant State's Attorney, and Renee Goldfarb, Assistant State's Attorney, of counsel), for the People.

JUSTICE BUCKLEY delivered the opinion of the court:
Following a jury trial, defendant Maurice Mays was convicted of murder and attempted murder. In *People v. Mays* (1988), 176 Ill. App. 3d 1027, 532 N.E.2d 843, we affirmed his convictions, but remanded for a hearing to be held in accordance with the Supreme Court decision in *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712. On remand, at the *Batson* hearing, the trial judge ruled that defendant made a *prima facie* showing of racial discrimination in the State's exercise of its peremptory challenges.

The judge concluded, however, that the State's explanations for its use of the challenges were "race neutral" and, therefore, held that "there has been no satisfactory showing of racial prejudice in the selection of the jury." Consequently, he confirmed defendant's convictions and sentence. Defendant appeals this finding.

Defendant's trial on the underlying charges was held in September 1985. After jury selection was completed, defendant moved for a mistrial on the grounds that the State purposely used its peremptory challenges in a racially discriminatory manner in order to exclude all blacks from the jury. He asserted that this racial discrimination in jury selection would deny him a fair trial and "prevent[ ] him from being tried by a cross section of the community, and a trial by his peers as provided for in the Constitution." The trial judge invited the State to justify the use of six of its seven peremptory challenges "against the only black people on the venire." The State, however, refused to explain the use of its challenges. The trial judge stated that it appeared to him that several of the veniremembers were excused solely on account of their race. He denied defendant's motion, however, because he believed that he did not have "any authority, as I understand it, to declare a mistrial under circumstances like this."

Following the jury trial, defendant was convicted of first-degree murder and attempted murder and was sentenced to natural life imprisonment without parole. He appealed his convictions and sentence on numerous grounds including, *inter alia*, that the State purposely discriminated against blacks in the exercise of its peremptory challenges. (*Mays*, 176 Ill. App. 3d at 1032, 532 N.E.2d at 845.) While the case was pending on direct appeal, the United States Supreme Court decided the *Batson* case. In *Batson*, the Court held that " 'the Equal Protection Clause forbids the prosecutor to [peremptorily] challenge potential jurors solely on account of their race.' " (*People v. Banks* (1993), 241 Ill. App. 3d 966, 970, 609 N.E.2d 864, 867, quoting *Batson*, 476 U.S. at 89, 90 L. Ed. 2d at 83, 106 S. Ct. at 1719.) This court affirmed defendant's convictions and sentence, but, following precedent which had established that *Batson* applied retroactively to all cases which were pending on direct appeal or which were not yet final when it was decided (*Griffith v. Kentucky* (1987), 479 U.S. 314, 93 L. Ed. 2d 649, 107 S. Ct. 708; *People v. Johnson* (1986), 148 Ill. App. 3d 163, 498 N.E.2d 816), remanded to the trial court for a hearing to be conducted in accordance with *Batson. Mays*, 176 Ill. App. 3d at 1045, 532 N.E.2d at 854.

At the *Batson* hearing, it was established that the jury consisted of nine whites and three Hispanics. The first alternate juror was white, and the second alternate juror was black. The second alternate juror, however, was chosen after the State had exercised all its peremptory challenges.

The trial judge first considered whether the defense had made a *prima facie* showing of purposeful discrimination. After hearing argument on this question, the judge concluded that there was no apparent reason to exclude the six black jurors other than on account of their race. He ruled, therefore, that defendant had established a *prima facie* case.

The judge then listened to the reasons offered by the State for each of its questioned peremptory challenges. The State's reasons were offered by former assistant State's Attorney Arthur Neville, who was one of the prosecutors at defendant's trial. Neville did not have the notes that he had taken during the jury selection. He refreshed his memory, however, by reading the transcript and the juror cards. After hearing arguments, the judge ruled that the reasons offered by the State were "race neutral" and that there was "no satisfactory showing of racial prejudice." Defendant appeals the judge's conclusion that the State did not engage in purposeful race discrimination in the exercise of its peremptory challenges.

In *Batson*, the Supreme Court reaffirmed the principle " 'that the State denies a black defendant equal protection of the laws when it puts him on trial before a jury from which members of his race have been purposely excluded.' " (*People v. Evans* (1988), 125 Ill. 2d 50, 62, 530 N.E.2d 1360, 1365, quoting *Batson*, 476 U.S. at 85, 90 L. Ed. 2d at 80, 106 S. Ct. at 1716.) The Court reasoned that such discrimination in jury selection denies the defendant his right to have his fate determined by a jury of his peers. (*Batson*, 476 U.S. at 86, 90 L. Ed. 2d at 80-81, 106 S. Ct. at 1717.) The *Batson* Court also recognized that such a jury selection practice violates the excluded juror's constitutional rights because "[a] person's race simply 'is unrelated to his fitness as a juror.' " (*Batson*, 476 U.S. at 87, 90 L. Ed. 2d at 81, 106 S. Ct. at 1718, quoting *Thiel v. Southern Pacific Co.* (1946), 328 U.S. 217, 227, 90 L. Ed. 1181, 1188, 66 S. Ct. 984, 989.) Consequently, the State is forbidden from "challeng[ing] potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." *Batson*, 476 U.S. at 89, 90 L. Ed. 2d at 83, 106 S. Ct. at 1719.

The *Batson* Court then set out the now familiar three-step approach for analyzing an objection to the State's exercise of its peremptory challenges against black veniremembers. First, after making an objection, the defendant must establish a *prima facie* case of purposeful discrimination in the State's exercise of its peremptory challenges. (*Batson*, 476 U.S. at 96, 90 L. Ed. 2d at 87, 106 S. Ct. at 1723.) If the trial judge concludes that defendant has made a *prima facie* showing of purposeful discrimination, the burden shifts to the State to present "clear and reasonably specific" race-neutral explanations for its challenges which are "related to the particular case to be tried." (*Batson*, 476 U.S. at 98 & n.20, 90 L. Ed. 2d at 88 & n.20, 106 S. Ct. at 1724 & n.20; *Banks*, 241 Ill. App. 3d at 971, 609 N.E.2d at 867.) It is insufficient for the State to merely list a series of unrelated facts. (*People v. Harris* (1989), 129 Ill. 2d 123, 184, 544 N.E.2d 357, 384; *Banks*, 241 Ill. App. 3d at 974, 609 N.E.2d at 975.) The prosecutor must articulate which facts, *in fact*, were the basis for his decision to challenge the black juror or jurors. (*Harris*, 129 Ill. 2d at 184, 544 N.E.2d at 384.) Although the explanations "need not rise to the level justifying exercise of a challenge for cause," the prosecutor will not rebut defendant's *prima facie* case "merely by denying that he had a discriminatory motive or 'affirm[ing] [his] good faith in making individual selections.'" (*Batson*, 476 U.S. at 97-98, 90 L. Ed. 2d at 88, 106 S. Ct. at 1723-24, quoting *Alexander v. Louisiana* (1972), 405 U.S. 625, 632, 31 L. Ed. 2d 536, 543, 92 S. Ct. 1221, 1226; *People v. McDonald* (1988), 125 Ill. 2d 182, 198, 530 N.E.2d 1351, 1358.) The proffered explanation will be deemed to be a *per se* violation of the equal protection clause if discriminatory intent is apparent on its face. However, " '[u]nless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.' " *People v. Fauntleroy* (1991), 224 Ill. App. 3d 140, 158, 586 N.E.2d 292, 303, quoting *Hernandez v. New York* (1991), 500 U.S. 352, 360, 114 L. Ed. 2d 395, 406, 11 S. Ct. 1859, 1866.

Finally, if the explanation is facially race-neutral, the trial judge has the duty to make a " ' "sincere and reasoned attempt to evaluate the prosecutor's explanation in light of the circumstances of the case" ' " (*Banks*, 241 Ill. App. 3d at 971, 609 N.E.2d at 868, quoting *Harris*, 129 Ill. 2d at 174-75, 544 N.E.2d at 380, quoting *People v. Hall* (1983), 35 Cal. 3d 161, 167, 672 P.2d 854, 858, 197 Cal. Rptr. 71, 75) and to determine "if the defendant has established purposeful discrimination." (*Batson*, 476 U.S. at 98, 90 L. Ed. 2d at 88-89, 106 S. Ct. at 1724; *Banks*, 241 Ill. App. 3d at 971, 609

N.E.2d at 868.) The trial judge's determination on this issue is a finding of fact which, in a large part, will turn on an evaluation of credibility. (*Batson*, 476 U.S. at 98 n.21, 90 L. Ed. 2d at 89 n.21, 106 S. Ct. at 1724 n.21; *Harris*, 129 Ill. 2d at 175, 544 N.E.2d at 380; *Banks*, 241 Ill. App. 3d at 971, 609 N.E.2d at 868.) Therefore, the trial judge's ruling must be afforded great deference on appeal and will not be reversed unless clearly erroneous. *Hernandez*, 500 U.S. at 369, 114 L. Ed. 2d at 412, 111 S. Ct. at 1871; *People v. Hope* (1992), 147 Ill. 2d 315, 321, 589 N.E.2d 503, 506; *Banks*, 241 Ill. App. 3d at 971-72, 609 N.E.2d at 868.

Defendant first maintains that the trial judge's finding that he made a *prima facie* showing of purposeful discrimination is not against the manifest weight of the evidence. The State, on the other hand, contends that a *prima facie* showing was not made because the trial judge did not consider all the relevant circumstances and based his finding solely on the number of blacks excluded. The State asserts, however, that argument on whether a *prima facie* case was established is moot since this court previously ruled that such a showing had been made in *Mays* (176 Ill. App. 3d at 1046, 532 N.E.2d at 854-55).

■■ We agree with the State that any question as to whether defendant established a *prima facie* case of purposeful discrimination is moot, but not for the reason advanced by the State. In *Mays*, we affirmed defendant's convictions but remanded to the trial court so that a *complete Batson* hearing could be held. We never ruled that defendant established a *prima facie* case, but specifically left that determination for the trial judge recognizing that "the initial *prima facie* determination is for the judgment of the trial judge." (*Mays*, 176 Ill. App. 3d at 1046, 532 N.E.2d at 854.) The question is moot, however, in light of the United States Supreme Court's decision in the *Hernandez* case. In *Hernandez* (500 U.S. at 359, 114 L. Ed. 2d at 405, 111 S. Ct. at 1866), the Supreme Court stated that "[o]nce a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a *prima facie* showing becomes moot." In this case, the trial judge found that defendant had made a *prima facie* showing, the State offered its explanations, and the judge ruled on the ultimate issue of purposeful discrimination. Consequently, the question is moot.

On appeal, therefore, we must determine whether the State has met its burden of providing "clear and reasonably specific" race-

neutral explanations which are related to this particular case. (*Batson*, 476 U.S. at 98 n.20, 90 L. Ed. 2d at 88 n.20, 106 S. Ct. at 1724 n.20; *Banks*, 241 Ill. App. 3d at 971, 609 N.E.2d at 867.) Since six black veniremembers were peremptorily challenged, we must examine the explanations offered by the State as a justification for the exclusion of each veniremember. The six black veniremembers whom the State peremptorily challenged were Ernest Mack, Willie Edwards, Barbara Watson, Deborah Ward, Deshay Bell, and Yolanda Black. If the State fails to meet its burden on even one of the challenges, defendant's convictions must be reversed and the case remanded for a new trial. *Harris*, 129 Ill. 2d at 175, 544 N.E.2d at 380; *Banks*, 241 Ill. App. 3d at 972, 609 N.E.2d at 868.

Preliminarily, former Assistant State's Attorney Neville stated that he did not have an independent recollection of the challenges he had used during jury selection at Mays' trial and any notes he had taken had been thrown away. He said, "I do not think there was a case I tried where I didn't exercise peremptory challenges, so I am sure I did." Neville stated that the transcript had been made available to him and he had studied the jury cards. Later, he admitted that he only read the jury cards of those veniremembers upon whom he had exercised peremptory challenges. He said that he saw "the things in the cards that I would traditionally look at by way of any juror, jury would be picked [*sic*] and reasons that I excused a juror."

### A. ERNEST MACK AND WILLIE EDWARDS

The prosecutor asserted that he challenged both Ernest Mack and Willie Edwards because on their jury cards they had marked off that they had been victims of crime, but, during *voir dire* questioning by the trial judge, it was elicited that they both actually were the accused. Mack had been arrested for possession of a controlled substance, and Edwards was arrested for driving on a revoked license. The prosecutor stated that, even though the offenses were not very serious, he found the answers on the jury cards "disconcerting." According to the prosecutor, the fact that these people violated the law, but checked off that they were victims, shows him "that they consider people who are arrested and charged with a crime to be victims rather than accused or offenders."

The trial judge ruled that this was a legitimate race-neutral reason based not upon the jurors' race, but upon criminal background and honesty in relating that background.

The State may legitimately peremptorily challenge potential jurors who have been arrested or convicted of crimes because they may be biased against the State. (See *People v. Lyles* (1985), 106 Ill. 2d 373, 393, 478 N.E.2d 291, 299.) Defendant asserts, however, that this reason for excluding Mack and Edwards was pretextual because the State accepted Michael Borre, a white juror, who also indicated on his juror card that he was a victim of crime and had never been an accused in a criminal case, yet, during the *voir dire* examination he stated, "I have been caught for driving when I shouldn't be driving a couple times."

■ It does not automatically follow that the prosecutor's explanation for challenging several black veniremembers was pretextual because his articulated reason to some extent may apply to accepted white veniremembers. (*People v. Hooper* (1989), 133 Ill. 2d 469, 511, 552 N.E.2d 684, 701; *Banks*, 241 Ill. App. 3d at 975, 609 N.E.2d at 870.) Unlike Mack and Edwards, juror Borre, in fact, was the victim of crime. He stated during *voir dire* examination that the stereo in his van had been stolen twice. Additionally, his statement that he had been stopped several times when he should not have been driving is not equivalent to having been accused of a crime. While both Mack and Edwards admitted they had been arrested, there is no evidence that Borre was ever arrested or even ticketed on these occasions.

Moreover, Borre was one of the last veniremembers questioned. It appears that the prosecutor could not have challenged Borre even if he wanted to because he had exercised all his challenges by the time Borre was called. Therefore, it is not clear from the record that this rationale for challenging jurors was inconsistently applied to white and black veniremembers. (See *People v. McDonald* (1988), 125 Ill. 2d 182, 199-200, 530 N.E.2d 1351, 1358-59.) Consequently, as to these two jurors, we cannot say that the trial judge's conclusion was clearly erroneous.

### B. BARBARA WATSON

When asked whether reviewing the transcript and the jury cards had helped him to recall why he had excluded Barbara Watson, the prosecutor stated:

"In reading the transcript regarding Barbara Watson, nothing came out at me immediately when reading that as to why I would have exercised a challenge regarding that particular juror. The one thing I noted is that she indicated that her husband worked but didn't know where he worked or the lo-

cation of where he worked. I find that a little strange not knowing where your husband worked but other than that, reading the transcript, I would not pinpoint one reason why or why not. I do not recall."

In ruling that the prosecutor's exclusion of Watson was race-neutral, the trial judge stated:

"[S]he clearly said that she did not know the location of her husband's place of employment.

\* \* \*

I can say that that would raise some type of a question—here's a person that's married, knows what type of job that husband has, knows where he has worked in the past, but now doesn't know where he physically works.

That might lead you to believe that this is not the type of person who is going to pay enough attention to be a juror. That is a race neutral reason."

The trial record shows that Watson stated during the *voir dire* that her husband had worked for the L. Sink Company for "maybe a year and a half." Although she did not know the exact location of L. Sink, she stated that her husband's previous employer for over 10 years was Lynn Medical in Des Plaines.

■ First, the prosecutor's statements demonstrate that he simply did not remember why he had challenged Watson. The State cannot rebut defendant's *prima facie* case without offering the specific reasons why the challenge was exercised. (*People v. Charles* (1992), 238 Ill. App. 3d 752, 758-59, 606 N.E.2d 603, 607-08.) Additionally, it is unclear whether the trial judge did more than simply determine that the prosecutor's proffered explanation was race-neutral. As stated above, once the explanation is determined to be race-neutral, the judge must address whether the State met its burden and rebutted defendant's *prima facie* case. *Hernandez*, 500 U.S. at 359, 114 L. Ed. 2d at 405, 111 S. Ct. at 1866.

Moreover, a court should not infer from the facts articulated by the State an unarticulated reason for the exclusion. (*Harris*, 129 Ill. 2d at 184, 544 N.E.2d at 384; *Banks*, 241 Ill. App. 3d 975, 609 N.E.2d at 871.) " 'Rather, a court must focus its inquiry on the reasons actually articulated by the State.' " (*Banks*, 241 Ill. App. 3d at 975, 609 N.E.2d at 871, quoting *Harris*, 129 Ill. 2d at 184, 544 N.E.2d at 384.) Here, the prosecutor stated that he found the fact that Watson did not know the location of her husband's employment to be "strange." He did not say that this fact caused him to feel she was "not the type of person who is going to pay enough atten-

tion to be a juror." The trial court, therefore, impermissibly inferred this to be the reason for the exclusion.

## C. YOLANDA BLACK

When giving his reasons as to why he excluded Yolanda Black, the prosecutor stated:

"With regards to Ms. Black, again I do not have the benefit of the, of reading the body language or her demeanor when answering questions. One thing I will say, though, in reviewing the transcript and the card it really did not give me much information about Yolanda Black and one of the things that always struck me when selecting the jury is that sometimes you did not get a good feel for a juror's background because they didn't volunteer information or sometimes questioning did not for some reason or other, the questions did not seem to elicit information out of them and Ms. Black, I indicated I didn't get a lot of information that helped, I could see would help me make a decision and sometimes I would not feel comfortable if I did not know something about the juror or know more about a juror than just she is working, she has a family and where she lives."

Additionally, the prosecutor stated that Black was 25 years old and he has always felt more comfortable with older jurors because "for some reason or another, they seem to take their job a little bit more serious."

In assessing the State's explanation for excluding Black, the trial judge stated:

"Yolanda Black, she had a lack of education, which was pointed out here. The other young juror that was selected had an education and lived with her parents. So, she really wasn't a person who was with no ties to the community. Miss Black was single and had a young child. I think that's a legitimate reason."

■ First, as stated above, in order to rebut defendant's *prima facie* case of purposeful discrimination, the State must put forth "clear and reasonably specific" race-neutral explanations which are *"related to the particular case to be tried."* (Emphasis added.) *(Batson,* 476 U.S. at 98 & n.20, 90 L. Ed. 2d at 88 & n.20, 106 S. Ct. at 1724 & n.20.) If the prosecutor does not recall the specific reasons why he excluded a particular juror, then the State cannot meet its burden. *(Harris,* 129 Ill. 2d at 181, 544 N.E.2d at 303; *Charles,* 238 Ill. App. 3d at 758-59, 606 N.E.2d at 607-08.) Neville's state-

ments illustrate that he really does not remember why he excluded Black. Rather than "clear and reasonably specific" trial-related reasons as to why he excluded Black, his explanation appears more to be a discussion of his general philosophy of jury selection in all trials.

Second, the prosecutor asserted that a reason he may have excluded Black is because the questioning on *voir dire* and her jury card did not elicit much information from her and she did not offer any extra information. Defendant contends that this explanation was speculative and inconsistently applied to black and white jurors. (See *People v. Kindelan* (1991), 213 Ill. App. 3d 548, 559, 572 N.E.2d 1138, 1144.) When the State asserts that it challenged jurors based on a lack of information, the explanation "should be closely scrutinized since [it] can be easily utilized as a pretext for discriminatory challenges." (*Harris*, 129 Ill. 2d at 188, 544 N.E.2d at 386.) "Courts, in evaluating such explanations, should consider whether the State made any attempt at discovering the unknown information [citation] by, for example, requesting that supplemental questions be asked during *voir dire* [citation]." (*Harris*, 129 Ill. 2d at 188, 544 N.E.2d at 386.) Here, the prosecutor admitted that he did not request that the judge ask any additional questions. Additionally, Black concisely answered every question on her jury card. The record illustrates that at least six accepted jurors answered their jury cards in the same manner as Black and also did not volunteer additional information. No explanation for this inconsistency is apparent from the record nor was one offered by the prosecutor. In fact, the prosecutor said he had no explanation because he had only examined the cards of the jurors he had peremptorily challenged. Therefore, we must conclude that this proffered reason that the State lacked information about Black was speculative and inconsistently applied to black and white jurors. *McDonald*, 125 Ill. 2d at 199-200, 530 N.E.2d at 1358-59; *Kindelan*, 213 Ill. App. 3d at 559, 572 N.E.2d at 1144-45.

Another reason the prosecutor offered for challenging Black was that she was young and he preferred older jurors. Courts have held that the State may challenge potential jurors based upon their youth under the assumption that older jurors are more responsible. (*Kindelan*, 213 Ill. App. 3d at 556, 572 N.E.2d at 1143; *People v. Taylor* (1988), 171 Ill. App. 3d 261, 269, 524 N.E.2d 1216, 1221.) Black was 25 years old. The State also excluded 20-year-old Deshay Bell. Defendant asserts that this explanation, if valid, was inconsistently applied because the State accepted Brian Palmer, who was 26

years old, and 29-year-old Michael Borre. The prosecutor offered no explanation nor did he mention additional traits or characteristics which Borre or Palmer exhibited which would distinguish them from Black or Bell. He stated he could not give an explanation because he had only reviewed the jury cards of those persons whom he had peremptorily challenged. Since no reasonable explanation was offered to distinguish Borre and Palmer from Black and Bell, we must conclude that this reason was inconsistently applied "between the challenged black veniremen and the white veniremen who eventually sat on the defendant['s] jury." *McDonald*, 125 Ill. 2d at 200, 530 N.E.2d at 1359.

Finally, and most importantly, as illustrated above in the court's findings of fact, the judge based his conclusion both on reasons not articulated by the prosecutor and incorrect facts. It is improper for a trial judge to base his conclusion upon reasons not articulated by the State. (*Harris*, 129 Ill. 2d at 184, 544 N.E.2d at 384.) The judge has the duty to make a sincere and reasoned attempt to evaluate the reasons actually proffered by the State and to determine whether, in light of the circumstances of the case, they are legitimate, race-neutral explanations which overcome the defendant's *prima facie* case. (*Harris*, 129 Ill. 2d at 174-75, 544 N.E.2d at 379-80; *Banks*, 241 Ill. App. 3d at 971, 609 N.E.2d at 868.) In this case, the prosecutor never asserted Black's educational background, community ties, marital status or parental status as reasons for her exclusion. Additionally, even assuming he had, the court's findings were incorrect. Black was married with no children and not, as the court found, unmarried with a young child. Additionally, she had ties to the community, having lived there for more than 10 years. Clearly, the trial judge did not satisfactorily perform his duty and properly scrutinize the State's explanations. This reason alone mandates reversal of the judge's conclusion as to this juror.

### D. DESHAY BELL

The prosecutor offered the following reasons for his exclusion of Deshay Bell. The prosecutor stated:

> "She was young, twenty years old. As I stated before, earlier, I had a preference towards older jurors. In addition, you didn't learn a lot about her from the card or questioning. All the boxes were marked no. She did not know a lawyer or a police officer. She was not married. She had no children. She lived with her parents. If I recollect she did not read any periodicals or belong to any organizations. Her whole question-

ing probably took a total of maybe five minutes and I just find that you don't get a lot of information on somebody like that, so you don't get a good feel for an individual under those conditions so I, again not feeling entirely comfortable with the individual, would exercise a peremptory challenge."

The trial judge found "as to Miss Bell, 20, single and renting. I believe that under those circumstances, with his, with what he said was his reasons for selecting a jury, that those are race-neutral reasons."

■ The prosecutor first asserted that he excluded Bell because she was only 20 years old. As stated above, youth is a legitimate, race-neutral reason for challenging a juror. (*Kindelan*, 213 Ill. App. 3d at 556, 572 N.E.2d at 1143.) Defendant cites the *McDonald* case for the proposition that, although this reason may be legitimate, it will not be accepted by the court if it is not consistently applied. (*McDonald*, 125 Ill. 2d at 200, 530 N.E.2d at 1359.) Defendant asserts that this reason was inconsistently applied because the State accepted several other jurors who were in their twenties and articulated no characteristics which differentiate Bell or Black from the young white jurors accepted.

As set forth above, the State offered no explanation as to why it challenged Bell and 25-year-old Black and not 26-year-old Brian Palmer or 29-year-old Michael Borre. The prosecutor said he could not give an explanation because he did not remember and had not reviewed the jury cards or *voir dire* questioning of those jurors he accepted. The judge's finding does not mention this factor and demonstrates that he did not meaningfully assess the State's reasons for excluding this juror.

The prosecutor also asserted that he did not learn much about Bell from her jury card or the *voir dire* questioning because she marked all the boxes "no" on her jury card. However, he did not attempt to gain any additional information from her "by, for example, requesting that supplemental questions be asked during *voir dire*." (*Harris*, 129 Ill. 2d at 188, 544 N.E.2d at 386.) Additionally, at least six other accepted jurors also answered these same questions by checking the "no" box on the jury card. The prosecutor also asserted that she did not read any periodicals. Without some proffered reason as to why this "fact" would make Bell an unacceptable juror, it means absolutely nothing. It should be noted, however, that Bell stated on *voir dire* examination that she subscribed to both Time magazine and Savvy.

E. DEBORAH WARD

The prosecutor set forth the following reasons for excluding Deborah Ward:

"One of the things that struck me about Deborah Ward was that she was thirty-one years old and had children who were fourteen, thirteen, and twelve which means she was seventeen years old when she had her first child. I find that to be a very young age to be having your first child and sometimes was a little leery that may show some irresponsibility or someone who, for one reason or another, got caught up in something they could not handle. She said she was single with three children, but on the back of her card she mentioned that her husband did not work and that her husband was not employed, so I found that to be inconsistent, too. She or a friend had been the victim of a crime. She did not recall what the crime was and again all those things taken together to me gave me the impression of someone who either wasn't concerned or slightly irresponsible."

In assessing this explanation the judge stated:

"Debra Ward. I believe that saying that she was young and had three children by the time she was 17, I think that is a reason to suspect whether or not this person has the maturity that is necessary on a jury. And there's no indication here her husband doesn't work. There's no indication that there is that maturity and that firmness to the community, under these circumstances, that would make her the type of juror that anybody would want."

■ Again, the trial judge did not fulfill his obligation to scrutinize the reasons actually proffered by the prosecutor. (*Harris*, 129 Ill. 2d at 176, 544 N.E.2d at 380; *Banks*, 241 Ill. App. 3d at 976, 609 N.E.2d at 871; *People v. Walls* (1991), 220 Ill. App. 3d 564, 575, 581 N.E.2d 264, 272.) The most "clear and reasonably specific" explanation that the prosecutor offered to explain his challenge of Ward was that she had had her first child at the age of 17. The prosecutor asserted that this indicated to him "irresponsibility." The trial court's ultimate finding, however, was based upon the incorrect fact that she "had three children *by the time* she was 17." This finding, therefore, is clearly erroneous and must be reversed.

In sum, the trial judge's findings that the prosecutor's explanations for excluding Watson, Black, Bell and Ward were race-neutral

and sufficient to rebut defendant's *prima facie* showing of purposeful racial discrimination in the State's exercise of its peremptory challenges were clearly erroneous. We recognize that the *Batson* hearing was held five years after defendant's original conviction and that this made it extremely difficult for the State to meet its burden. Unfortunately, however, a more relaxed *Batson* test does not exist for those cases in the unique posture of having been pending on direct appeal at the time of the *Batson* decision.

For the foregoing reasons, we reverse and remand for a new trial.

Reversed and remanded.

CAMPBELL and O'CONNOR, JJ., concur.