THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. HAROLD WILLIAMS, Defendant-Appellant.

First District (4th Division)    No. 1—92—0380

Opinion filed May 12, 1994.

Rita A. Fry, Public Defender, of Chicago (Ira Sheffey, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Judy L. DeAngelis, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE CAHILL delivered the opinion of the court:

We consider whether the State's race-neutral explanations for the exercise of its peremptory challenges in the trial below rebutted a *prima facie* case of racial discrimination. See *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712.

Williams stands convicted of murder (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(a)(1)) and attempted murder (Ill. Rev. Stat. 1985, ch. 38,

pars. 8—4, 9—1(a)). In *People v. Williams* (1990), 199 Ill. App. 3d 549, 557 N.E.2d 410, we reviewed this case for the first time and held that Williams established a *prima facie* case of discrimination when the State exercised eight of nine peremptory challenges against blacks. We remanded to allow the State to offer race-neutral explanations for its peremptory challenges. The State offered reasons that touched upon the age, marital status, employment, and demeanor of the blacks excused. The trial court found the State's explanations sufficient to rebut the *prima facie* case. Williams now argues that the State's explanations for seven of the veniremembers were pretextual and inconsistently applied. We disagree and affirm.

A trial court's finding that the State excused black veniremembers for race-neutral reasons will not be reversed on review unless it is clearly erroneous. (*People v. Andrews* (1993), 155 Ill. 2d 286, 293-94, 614 N.E.2d 1184, 1189.) In *Andrews* our supreme court also held that, when the State gives more than one reason for excusing a veniremember, the reviewing court need only accept one of the reasons. *Andrews*, 155 Ill. 2d 286, 614 N.E.2d 1184.

The State excused Tyrone Robinson and Patrick Smith because they were young and single. The State explained that it wanted older, mature males as jurors. Robinson and Smith were 22 years old. The State may challenge potential jurors based on their youth under the assumption that older jurors are more responsible. (*People v. Kindelan* (1991), 213 Ill. App. 3d 548, 556, 572 N.E.2d 1138, 1143; *People v. Taylor* (1988), 171 Ill. App. 3d 261, 269, 524 N.E.2d 1216, 1221.) Also, the State's opinion that Robinson and Smith lacked maturity and responsibility was not inconsistently applied. The youngest male impaneled was 28 and married.

The State excused Robert Irby because he was divorced. The State explained that a divorced male juror might sympathize with the defendant who, in addition to murder, was charged with aggravated criminal sexual assault. Williams argues that the State's explanation was pretextual because it accepted two white, unmarried males, but he fails to note that neither had been divorced. There were no divorced males on the jury, so the State's exclusion of Irby is consistent with its explanation.

The State excused Marsha Wheeler because she appeared timid and frightened. The State explained that her demeanor showed that she might be afraid to sign a guilty verdict. Hesitant or timid demeanor is a legitimate, racially neutral reason to challenge a potential juror. (*People v. Hooper* (1989), 133 Ill. 2d 469, 509, 552 N.E.2d 684, 701.) The record supports the State's impression of Wheeler's demeanor. On *voir dire* the court asked Wheeler, "Does it

scare you, *you look like you were frightened,* it doesn't bother you?" (Emphasis added.) Although she answered, "No," the trial court's question suggested that it shared the State's concern, and since the court was in the best position to observe her behavior, the finding that the State's explanation was race-neutral is not clearly erroneous. See *People v. Baisten* (1990), 203 Ill. App. 3d 64, 560 N.E.2d 1060.

The State excused Hattie Smith because it believed she held a grudge against the court system and might not sign a guilty verdict. On *voir dire* when Smith stated that her aunt was the victim of a crime, the court asked:

"Q. Was that case handled fairly as far as you were concerned by the courts?

A. [Smith]: Well I have to say no.

Q. You did not like the way it turned out?

A. No. I did not."

Later the court asked:

"Q. You have no personal hard feelings against our court system, have you?

A. [Smith]: Well right there I did.

***

Q. If the State carries its burden and proves the defendant guilty beyond a reasonable doubt, would you have any problems signing a guilty verdict?

A. I might. I don't—I don't know. For a reason.

Q. What is your reason?

A. I wouldn't want to have the responsibility of accusing somebody wrongly. I would want to be for sure.

Q. Of course.

A. That way I might hesitate."

This is a classic colloquy, familiar to all experienced prosecutors, defense attorneys, and judges. A reticent juror seldom survives *voir dire* if the prosecutor has peremptory challenges left. The trial court later stated that Smith was "very reluctant" and found the State's explanation was race-neutral and not pretextual. Based on this record the court's finding is not clearly erroneous.

The State excused Janette Pickett because she had two unemployed sons about the same age as the defendant. Pickett's sons were 25 and 30 years old. Williams was 30. The State may excuse a prospective juror because she has children close in age to the defendant. (*Andrews,* 155 Ill. 2d at 294-95, 614 N.E.2d at 1189.) Williams argues that the State's explanation was pretextual because three white jurors had sons about the same age as the defendant. But, the record shows only one juror, Mr. Gold, had sons who were about the same age as the defendant. They were 30 and 35 years old. In *People v.*

*Young* (1989), 128 Ill. 2d 1, 23, 538 N.E.2d 453, 458, our supreme court explained that if a prosecutor rejects a black veniremember for certain characteristics, but does not reject a white veniremember who shares the same characteristics, "it does not follow that this in itself shows that the prosecutor's explanations were pretextual." The court stated, "Though a part of the prosecutor's explanations may have been applicable to white jurors who were not challenged, the white jurors may have *** exhibited a trait which the prosecutor reasonably could have believed would make him or her desirable as a juror." (*Young*, 128 Ill. 2d at 23-24, 538 N.E.2d at 458-59.) Gold's sons were employed, one as a lawyer, the other as a computer analyst. Pickett's sons were unemployed. The State could have decided that Gold exhibited favorable characteristics not shared by Pickett.

The State excused Janet King because she was convicted of a crime five years ago. The court asked and she answered the following questions:

"Q. Have you or any members of your family or close friends ever been charged with or convicted of a crime?

A. I thought not but yes.

Q. What would that be?

A. Well I was accused once of something and I was given supervision, but I was advised that I should take this other stance.

Q. What?

A. That I should take a certain stance in the case. I was released."

The State explained that King's use of the word "accused" instead of "convicted" showed that she believed she was not treated fairly by the justice system and might be biased against the State. The defendant argues that the State's explanation was pretextual because it accepted a white veniremember, Mr. Gerena, who was convicted of a crime and who expressed a grudge against the system. Gerena stated that he was charged with drunken driving 15 years ago. He stated, "I had no lawyer. I had no money to do it. They would not appoint me one so they discriminated me otherwise [*sic*]." The court then asked whether it made him feel mad. Gerena answered, "In a way, they did makes me mad, but I am glad too. I am happy too because that way I know, you know, that is a crime." He then stated he had no bad feelings for the court system. Gerena's attitude distinguishes him from King. Gerena acknowledged he was convicted and stated he was "happy" with the result, while King's statements indicate she felt she was not treated fairly by a system which had "accused" her of a crime.

Williams also contends that the court weighed elements in the

King inquiry not mentioned by the State. When the court reviewed the reasons offered by the State, it added that King had some "scruples against the death penalty" and stated that the State would consider that because it was seeking the death penalty.

Williams relies on *People v. Harris* (1989), 129 Ill. 2d 123, 544 N.E.2d 357, and *People v. Mays* (1993), 254 Ill. App. 3d 752, 626 N.E.2d 1154, to support his position that the trial court should not infer from the reasons articulated by the State an unarticulated reason for the exclusion. In *Mays*, the trial court's finding that the State rebutted the defendant's *prima facie* case was held improper because the trial court based its finding solely on reasons not articulated by the State. In *Harris*, findings were held erroneous because they were based on reasons not in the record. The trial court here based its finding on reasons offered by the State. The court mentioned King's death penalty response, but did not base his decision solely on this response. Also, the court's ruling was supported by evidence in the record.

We find the trial court's determination that the State's explanations were race-neutral and sufficient to rebut the defendant's *prima facie* case is not clearly erroneous.

Affirmed.

JOHNSON and HOFFMAN, JJ., concur.