Clyde T. HUTCHINSON, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 06–00–00044–CR.

Court of Appeals of Texas, Texarkana.

Submitted March 12, 2001.

Decided March 27, 2001.

---

Kevin McCarter, Law Office of Terry L. Cox, Marshall, for appellant.

Richard Berry, Jr., Criminal District Attorney, Harrison County, Al Davis, Assistant District Attorney, Marshall, for the State.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

Opinion by Chief Justice CORNELIUS.

## OPINION

Clyde Hutchinson appeals from his conviction for burglary of a building. Hutchinson was tried before a jury which found him guilty and, after Hutchinson pleaded true to enhancements in the indictment, assessed his punishment at twenty years in prison. Hutchinson filed a motion for new trial which the trial court denied. In four points of error, Hutchinson contends that the trial court erred: 1) by denying his *Batson* challenge to the State's exercise of its peremptory challenges, and 2) by denying his motion for new trial. He also challenges the legal and factual suffi-

ciency of the evidence to support his conviction.

Hutchinson was employed at the Pottery Tent in Marshall from November 1998 until April 1999. Due to health problems, Hutchinson was unable to continue his work as a stock handler. At the end of July, the store's management began noticing that certain items were missing from the store. The assistant manager, Glenwood Oney, set up a video camera to surveil the store after closing. One of the tapes showed an individual in the store after normal business hours, carrying merchandise. Mr. Oney viewed the tape with Paul Herrington, the store manager, and the two decided that the person on the surveillance film was Hutchinson. They based their opinion on the person's physical characteristics and similarities to Hutchinson. Herrington took the video to Jeff Ash at the Harrison County Sheriff's Department and told him of his belief that Hutchinson had been stealing from the Pottery Tent. During his investigation, Ash visited Hutchinson's house and found numerous items that allegedly were removed from the store.

 In his first point of error, Hutchinson contends that the trial court erred by overruling his objection to the State's use of peremptory challenges to strike five of seven African Americans from the venire. In *Batson v. Kentucky,* the United States Supreme Court held that the Equal Protection Clause of the United States Constitution forbids a prosecutor from challenging potential jurors solely on account of their race or on the assumption that jurors of the same race as a defendant, as a group, will be unable to impartially consider the State's case against that defendant. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In determining whether Hutchinson's rights have been violated under the *Batson* holding, the standard of review is whether a trial court's finding is clearly erroneous. *Whitsey v. State,* 796 S.W.2d 707, 726 (Tex. Crim.App.1989).[1] As a reviewing court, we are no longer obliged to consider the evidence in the light most favorable to the trial judge's rulings to determine if those rulings are supported by the record.[2] Rather, under *Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)), as a court of appeals we hold a trial court's finding clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Additionally, we are not bound by the rule of deference to accept every ruling of a trial court, especially when there is no specific finding of fact. *Yarborough v. State,* 947 S.W.2d 892, 896 (Tex.Crim.App.1997).

 In order to invoke the protection set forth in *Batson,* a defendant must raise an inference of purposeful discrimination, and the trial court must determine that a prima facie case of discrimination exists by virtue of the State's use of its peremptory challenges.[3] A defendant may establish

---

1. In an opinion on the State's motion for rehearing, the Court of Criminal Appeals announced that the "supported by the record" standard of review announced in *Keeton v. State,* 749 S.W.2d 861, 867 (Tex.Crim.App. 1988), was subsumed by the "clearly erroneous" standard found in FED. R. CIV. P. 52(a).

2. Former standard of review for *Batson* issues announced in *Keeton,* 749 S.W.2d at 867.

3. *Batson* held that a "pattern" of strikes against African–American jurors included in the particular venire might give rise to an inference of discrimination. *Batson v. Ken-*

this by showing: that he is a member of a cognizable racial group, that the prosecutor has exercised peremptory challenges to remove members of the defendant's race from the venire, and that these facts and any other relevant circumstances raise an inference that the prosecutor used peremptory challenges to exclude members of the venire because of their race. TEX. CODE CRIM. PROC. ANN. art. 35.261(a) (Vernon 1989); *Batson v. Kentucky*, 476 U.S. at 96, 106 S.Ct. 1712; *Brooks v. State*, 802 S.W.2d 692, 694 (Tex.Crim.App.1991). A *Batson* inquiry entails a three-step process. *Batson v. Kentucky*, 476 U.S. at 106, 106 S.Ct. 1712; *Chambers v. State*, 866 S.W.2d 9, 23 (Tex.Crim.App.1993). First, the opponent of a peremptory challenge must make a prima facie case of racial discrimination. *Purkett v. Elem*, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834, 839 (1995); *Williams v. State*, 937 S.W.2d 479, 485 (Tex.Crim.App.1996). Then the burden shifts to the proponent of the strike to come forward with a race-neutral reason for the challenge. *Id.*[4] Finally, if a race-neutral reason is given, the opponent of the strike shoulders the burden of proving intentional discrimination. *Id.* Whether the trial judge believes a proffered race-neutral reason is a step-three inquiry, and the opponent of the strike bears the burden of showing that the reason offered is merely a pretext for discrimination.

■■■ The issue of whether Hutchinson established a prima facie case of racial discrimination is unchallenged on appeal.[5] Accordingly, our review begins at the second step of the *Batson* analysis. A review of the record illustrates the following sequence of events. Shortly after the court dismissed jurors for cause, defense counsel asked the court to let the record reflect that the State excused five of seven African Americans on the panel. The court responded in the affirmative and called on the prosecutor to respond. The prosecutor then proceeded to give race-neutral reasons for its decision to challenge *four* of the five panelists who were challenged. The prosecutor explained that a person at the same address as panelist #17 had a criminal history; panelist #21 contacted the defense counsel for legal advice; panelist Joe Robertson executed a hot check in 1990; and panelist Ms. Singleton stated that a punishment of twenty years was "too much time for the offense," and a person named James Singleton, an occupant at the same address, had been arrested for possession of a controlled substance. At the conclusion of the State's presentation of the fourth race-neutral basis for its

---

tucky, 476 U.S. 79, 97, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

**4.** For the purpose of step two, a reason is deemed race-neutral so long as no discriminatory intent is inherent in the explanation given, even if the explanation is fantastic or implausible.

**5.** Notwithstanding the fact that this issue is unchallenged on appeal by the State, the fact that the prosecuting attorney announced his race-neutral reasons prior to a finding by the court of discrimination necessarily takes us to step two in *Batson*. In *Hernandez v. New York*, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991), the United States Supreme Court held that the preliminary issue of whether the defendant has made a prima facie showing of discrimination becomes moot once a prosecutor offers a race-neutral explanation for the peremptory challenge. The Court of Criminal Appeals has addressed this same issue on numerous occasions, and has consistently held that the issue of whether a prima facie case has been made is moot and consequently not subject to appellate review. *Malone v. State*, 919 S.W.2d 410, 412 (Tex. Crim.App.1996); *Staley v. State*, 887 S.W.2d 885, 897 (Tex.Crim.App.1994); *Wheatfall v. State*, 882 S.W.2d 829, 835 (Tex.Crim.App. 1994); *Chambers v. State*, 866 S.W.2d 9, 23 (Tex.Crim.App.1993); *Hill v. State*, 827 S.W.2d 860, 865 (Tex.Crim.App.1992).

peremptory challenges, the court denied Hutchinson's *Batson* motion. The prosecutor did not give any explanation for his strike of the fifth challenged panelist.

■ On appeal, Hutchinson does not challenge the propriety of the race-neutral bases proffered by the State for the first four challenged panelists, but he contends that the State wholly failed to provide a similar response for the fifth challenged venireman. Hutchinson thus argues that the State did not fulfill its burden to demonstrate that the exercise of its peremptory strike was not racially motivated.[6] The fact that the State neglected to offer a fifth race-neutral basis precludes the *Batson* analysis from proceeding any further. In *Brooks*, the Court of Criminal Appeals held that where the State did not meet its minimum requirement of coming forward with specific reasons for challenging two African American veniremen, which the court could find nondiscriminatory, the trial court's finding regarding the two challenged venirepersons was clearly erroneous. *Brooks v. State*, 802 S.W.2d at 695.[7] Based on the State's failure to meet its burden of producing permissible race-neutral justifications, the Court of Criminal Appeals reversed and remanded to the trial court for a new trial. *Id.* A little

over a year later, the Court of Criminal Appeals faced this same issue in *Wright v. State*, 832 S.W.2d 601, 604–05 (Tex.Crim. App.1992). Again the Court held that the failure of the State to articulate any specific reason, race-neutral or otherwise, rendered the trial court's determination as to the particular veniremember in question clearly erroneous. *Id.* at 605. Despite these two authoritative holdings, the Tyler Court of Appeals held that a prosecutor's failure to proffer race-neutral reasons for four of thirteen challenged veniremen did not show that the trial court's determination of no racial discrimination was clearly erroneous. *See McGee v. State*, 909 S.W.2d 516, 520–21 (Tex.App.—Tyler 1995, pet. ref'd). The State relies heavily on *McGee* for the proposition that we should follow the Tyler court's disposition of a case having an analogous fact situation. However, because the parties did not complete the evidence at the *Batson* hearing as to all the challenged panelists, we deemed it the better procedure to abate this appeal and remand the case to the trial court to complete the *Batson* hearing, and to hear evidence and make written findings on whether the omitted panelist was struck for racially discriminatory rea-

---

6. During oral argument both parties were profoundly troubled by the State's failure, attributing it to the hurried *Batson* hearing. In order to avoid any future recurrences, we would like to remind both the bench and bar of advice the Court of Criminal Appeals has provided. In *Yarborough*, the court advised, "Ideally, the trial court makes oral or written findings of facts and conclusions of law on its ruling with respect to its denial of appellant's *Batson* motion after a *Batson* hearing." *Yarborough v. State*, 947 S.W.2d 892, 901 (Tex. Crim.App.1997) (Mansfield, J., concurring). Further, the court indicated that a "better practice would be for the trial court to enter, on the record, its finding[s].... Such findings of facts and conclusions of law, being part of the record, would enable the reviewing court

to determine whether the trial court abused its discretion, i.e., whether its ruling was clearly erroneous." *Id.*

7. The holdings in both *Wright v. State*, 832 S.W.2d 601 (Tex.Crim.App.1992), and *Brooks v. State*, 802 S.W.2d 692 (Tex.Crim.App.1991), comport with the disposition of similar factual circumstances in a majority of jurisdictions. *See, e.g., United States v. Cunningham*, 713 F.Supp. 165 (M.D.N.C.1988); *People v. Charles*, 238 Ill.App.3d 752, 179 Ill.Dec. 771, 606 N.E.2d 603 (1992); *Tolbert v. State*, 315 Md. 13, 553 A.2d 228 (1989); *People v. Blunt*, 176 A.D.2d 741, 574 N.Y.S.2d 812 (1991); *State v. Brock*, 110 Ohio App.3d 656, 675 N.E.2d 18 (1996).

sons.[8]

The trial court has now held an evidentiary hearing and made written findings of fact and conclusions of law on whether the State used a peremptory challenge for race-based reasons against the fifth panelist, and has filed those findings and conclusions with this Court by means of a supplemental clerk's record. The court found, based on testimony, that the fifth panelist was Roderick Dixon, and the prosecutor struck Dixon because he had previously sought legal advice from Hutchinson's attorney. The court thus found, and the record supports, that the omitted panelist was struck for a nonracial reason. The court's denial of Hutchinson's *Batson* challenge was therefore not error.

■■■■■ In his third point of error, Hutchinson contends that the evidence is legally insufficient to support his conviction. In considering the legal sufficiency of the evidence, we examine the evidence in the light most favorable to the verdict. *Narvaiz v. State*, 840 S.W.2d 415, 423 (Tex. Crim.App.1992). We consider all of the evidence, whether properly or improperly admitted. *Chambers v. State*, 805 S.W.2d 459, 460 (Tex.Crim.App.1991). The standard of review is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Houston v. State*, 663 S.W.2d 455, 456 (Tex.Crim.App.1984); *see Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

Hutchinson complains that three of the elements of the offense of burglary of a building were not proven by the State. TEX. PEN. CODE ANN. § 30.02 (Vernon Supp. 2001). First, he challenges the sufficiency of the proof of entry in the building. The store manager, Paul Herrington, testified

that he saw deep scratches in a rear metal door, indicating that the door had been pried open. This testimony alone is sufficient to show entry into the building. Additionally, a video camera pointing toward the rear of the store showed a person carrying merchandise when the store was closed. The fact that the store was closed suggests that the perpetrator must have made entry into the store. Second, Hutchinson challenges the sufficiency of the evidence to prove the commission of the theft. Police investigator Jeff Ash went to Hutchinson's home shortly after receiving word from the Pottery Tent and retrieved numerous items resembling articles of merchandise that were removed from the store, as displayed on the surveillance camera. Finally, Hutchinson challenges the proof that he was the perpetrator. At least four witnesses testified that they knew Hutchinson and that he was the person shown in the film. Additionally, a hat was found in Hutchinson's truck resembling a hat worn by the person shown in the film. Finally, a witness testified that the person in the film was wearing a kind of red shirt issued only to employees of the store. Based on this evidence, we find that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

■■■■■ In his final point of error, Hutchinson contends that the evidence is factually insufficient to support his conviction. As a reviewing court we view all the evidence in a neutral light and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996). We review the evidence weighed by the jury that tends to prove the exis-

---

8. *See Rousseau v. State*, 824 S.W.2d 579 (Tex. Crim.App.1992), and *Brooks v. State*, 802 S.W.2d 692, two cases where this procedure was followed.

tence of the elemental fact in dispute and compare it with the evidence that tends to disprove that fact. *Jones v. State,* 944 S.W.2d 642, 647 (Tex.Crim.App.1996).

Hutchinson challenges the same three elements discussed in a legal sufficiency review. First, regarding the entry element of the offense: Although Officer Ash testified that he was uncertain as to the mode of entry into the building, the fact that the store manager testified that the rear door appeared to have been pried open, and that the video camera recorded an individual moving merchandise at a time when the store was closed, overcomes any uncertainty. Second, regarding the commission of the theft: Hutchinson contends the State offered no evidence that any merchandise was actually removed from the store. He points to testimony about lax inventory procedures, and that neither the manager nor the assistant manager ever knew exactly what had been taken. However, not only does the camera give a good indication as to the items taken from the store, but the assistant manager recollects that various items such as rugs and quilts were not in the store from one day to the next. Additionally, some of the items that appear to have been taken, as shown on the surveillance tape, were retrieved from Hutchinson's home by Officer Ash. Finally, regarding the identity of the perpetrator: Hutchinson points out that the individual on the tape never looks at the camera, so consequently his face is never exposed and no positive identification can be made. However, several individuals testified that the person on the tape has a similar build and gait to Hutchinson. Also, there is testimony indicating that the hat worn on the tape was found in Hutchinson's truck. We find that the evidence is factually sufficient to support the verdict.

For the reasons stated, the judgment is affirmed.