Opinion issued June 23, 2005






















In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00517-CR




TOM WADE BERRY, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 351st District Court
Harris County, Texas
Trial Court Cause No. 922037




MEMORANDUM OPINION

          Appellant, Tom Wade Berry, was charged by indictment with attempted capital
murder of a peace officer, to which he pleaded not guilty. See Tex. Pen. Code Ann.
§ 19.03(a)(1) (Vernon Supp. 2004–2005). A jury found appellant guilty and assessed
punishment at 47 years’ confinement.
          In his sole issue on appeal, appellant contends that the non-accomplice witness
evidence was insufficient to connect him to the commission of the offense.
          We affirm.
BACKGROUND
          Deputy Larry Andrew, of the Harris County Sheriff’s Department, was on
routine patrol with his partner, Deputy Glenn Vincent, late in the evening on August
22, 2002. They were nearing the end of their shift and had turned off the computer
in the patrol car. Moments later, they noticed a white Jeep illegally parked on the
shoulder of an overpass on north I-45. Believing it to be a stranded motorist, they
turned on their overhead lights and pulled in behind the Jeep to assist. As they got
out of the patrol car, the Jeep slowly drove away. The deputies became suspicious
and followed the Jeep for a short distance before it stopped again.
          The deputies pulled in behind the Jeep, and Deputy Vincent, in the driver’s
seat, got on the radio to report the stop. Deputy Andrew, got out of the passenger seat
and began to approach the passenger side of the Jeep. He then crossed over in front
of the patrol car and peeped around to the driver’s side of the Jeep. He could see the
silhouette of a driver and a passenger through the tinted windows. As he neared the
driver’s door, he suddenly saw movement out of the driver’s window, saw “a head
and a very close haircut,” heard a loud explosion, and felt “as if someone had pulled
the side of his face off.” The Jeep sped away. Deputy Andrew was injured but
recovered.
          Deputy Tony Lewis was on patrol when he heard the incident report over his
radio. The report stated that “shots had been fired at a traffic stop” and that a late-model, four-door, white SUV was involved. Lewis saw a white SUV, later identified
as the Jeep, pass in front of him and followed it to investigate. It pulled into an
apartment complex, stopping briefly to open the gate. Deputy Lewis pulled in behind
it. The Jeep suddenly accelerated, crashed through a back fence, and became bogged
down in a bayou. Deputy Lewis said he surmised that this was the suspect vehicle
based on this behavior. Deputy Lewis then saw three men get out of the Jeep and run
up an embankment toward a retention pond. Deputy Lewis testified that one of the
men fired a gun at him. After a manhunt that spanned the course of several hours, all
three men were arrested. Appellant was found hiding submerged in water and
violently fought being subdued and arrested.
          The Jeep was later identified as having been stolen from a car dealership in
Conroe. Deputies Andrew and Vincent had been unaware of this fact during the stop
because the computer was off in the patrol car. Inside the Jeep, the deputies found
a shotgun wedged in the right side of the driver’s seat. It was unloaded, but new and
spent shells were found in the floorboard. Also found in the Jeep were three ski
masks, a crow bar, bolt cutters, camouflage clothing, and a tow chain.
          A passerby, Chris Waters, witnessed the shooting. He was traveling in an
oncoming direction and heard the gunshot as he passed. He saw the upper half of the
driver’s face through the half-open driver’s window and made eye contact with him. 
He identified the driver as a stocky, black male. 
          Appellant admitted that, on the night of the offense, he and his friends, James
Boutte and Roarke Mayon, had planned to steal cars from a dealership on I-45. 
Appellant admitted that they were traveling in a stolen Jeep and that he had been
driving for most of the evening. In addition, appellant admitted the events leading
up to and including the gunshot to Deputy Andrew. However, appellant maintains
that, at the time of the incident, Boutte was driving the Jeep and fired the shot that hit
Deputy Andrew. 
          The testimony of indicted co-defendants Boutte and Mayon, generally tracked
appellant’s testimony except that they both testified that appellant was driving and
that appellant shot Deputy Andrew. Mayon testified that, as Deputy Andrew
approached the Jeep during the stop, appellant began pounding on the steering wheel
and cursing. Boutte and Mayon testified that appellant shouted, “I’m going to shoot
this mother f------.” 
          The indictment pled that appellant used a deadly weapon. The jury was
charged on the law of parties


 and returned a general verdict of guilty. During the
punishment phase, a special issue was submitted to the jury on appellant’s use of a
deadly weapon. The trial court entered an affirmative finding that appellant used or
exhibited a deadly weapon in the commission of the offense. 
Attempted Capital Murder
A.      Standard of Review
          A conviction cannot be had upon the testimony of an accomplice unless it is
corroborated by other evidence tending to connect the defendant with the offense
committed; the corroboration is not sufficient if it merely shows the commission of
the offense. Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon 2005). We review the
sufficiency of the corroborative evidence by eliminating from consideration the
testimony of the accomplice witness and examining the testimony of other witnesses
to determine whether the non-accomplice evidence tends to connect the accused with
the commission of the offense. Hernandez v. State, 939 S.W.2d 173, 176 (Tex. Crim.
App. 1997). 
          Non-accomplice evidence need not directly link the accused to the commission
of the crime nor need be sufficient on its own to establish guilt beyond a reasonable
doubt. Solomon v. State, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001). In addition,
non-accomplice evidence need not connect the accused with every element of the
offense. Vasquez v. State, 56 S.W.3d 46, 48 (Tex. Crim. App. 2001). Rather, the
standard is whether there is “some non-accomplice evidence which tends to connect
the accused to the commission of the offense.” Hernandez, 939 S.W.2d at 176.
B.      The Law
          A person commits criminal attempt if, “with specific intent to commit an
offense, he does an act amounting to more than mere preparation that tends but fails
to effect the commission of the offense intended.” Tex. Pen. Code Ann. § 15.01
(Vernon 2003). The offense of capital murder is committed when, inter alia, a person
intentionally or knowingly causes the death of a peace officer who is acting in the
lawful discharge of an official duty and the person knows the individual is a peace
officer. Tex. Pen. Code Ann. §§ 19.02(b)(1) (Vernon 2003), 19.03(a)(1) (Vernon
Supp. 2004–2005). 
          Specific intent to kill may be inferred from the use of a deadly weapon, unless
it is reasonably apparent that serious bodily injury or death could not result from the
particular manner of use. Godsey v. State, 719 S.W.2d 578, 580-81 (Tex. Crim. App.
1986). A firearm is, per se, a deadly weapon. Tex. Pen. Code Ann.
§ 1.07(a)(17)(A) (Vernon Supp. 2004–2005). 
 
C.      Analysis
          The court instructed the jury that witnesses Boutte and Mayon were accomplice
witnesses as a matter of law and fully instructed them as to the corroboration required
to convict appellant. Eliminating their testimony from consideration, the record
contains independent evidence that tends to connect appellant with the commission
of the offense. 
          Appellant’s own testimony provides evidence that connects him with the
commission of the offense. Appellant admitted at trial that he, Boutte, and Mayon
were together in the stolen white Jeep on the evening of the offense, that they planned
to steal cars, that they had guns with them, and that they were responsible for the
shooting of Deputy Andrew. 
          Appellant testified that, on the day of the offense, he had been driving the Jeep
all day and, at some point, two shotguns ended up in the Jeep. Appellant testified that
he, Boutte, and Mayon met at Boutte’s apartment and that, when they left in the Jeep,
appellant was driving, Boutte was in the front passenger seat, and Mayon was in the
back seat. Appellant explained that, due to a knee injury that prevented him from
running swiftly, his role was to drive Boutte and Mayon to the dealership and to wait
in the Jeep. 
          Appellant testified that, when they arrived at the target dealership, he drove
them around for several hours while they watched a security guard. Appellant
testified that they parked on the bridge over I-45 because it offered them a good
vantage point. Appellant testified that, when the patrol car pulled in behind them,
they initially eased away but that it followed them. Appellant stated that they
eventually stopped and that an officer approached on the driver’s side. Appellant
admitted that a shot was fired at the officer from the driver’s window. Appellant
testified that they sped to his apartment complex, crashed through the back fence, and
got stuck in a bayou. Appellant admitted that he fled on foot, that someone fired
shots at the pursuing officers, and that he hid in the water until he was discovered and
arrested.
          Moreover, other evidence tends to connect appellant to the commission the
offense. Chris Waters testified that when he passed the Jeep, the driver’s window
was half-way down and he made eye contact with the driver. He could see that the
driver was a black male, stocky in build, and much bigger than the other front
passenger. The evidence shows that, at the time of the offense, appellant weighed
190, while the other front passenger, Boutte, weighed 138. Further, other testimony
shows that Mayon was a “tall, skinny guy;” hence, he would not have been confused
with appellant. Waters testified that, choosing between photographs of the three men, 
he would definitely choose appellant as the driver. A less than positive identification
is sufficient to corroborate accomplice testimony. See Hutchinson v. State, 42 S.W.3d
336, 343 (Tex. App.—Texarkana 2001) (holding evidence of defendant’s build
sufficient to corroborate), aff’d, 86 S.W.3d 636 (Tex. Crim. App. 2002); Griffin v.
State, 486 S.W.2d 948, 950 (Tex. Crim. App. 1972).
          In addition, appellant’s cousin, Trena Cole, testified that, on the evening of the
offense, she went to appellant’s apartment to visit his wife and saw appellant with
Boutte and Mayon at the Jeep. Cole testified that Boutte was in the passenger side
of the Jeep and that a “tall, skinny guy” was in the back seat. Evidence that appellant
was in the company of the accomplices at or near the time or place of the crime is
proper corroborating evidence. See McDuff v. State, 939 S.W.2d 607, 613 (Tex.
Crim. App. 1997). 
          In sum, a rational jury could have reasonably concluded that the non-accomplice evidence tends to connect appellant with attempted capital murder of a
peace officer. See Hernandez, 939 S.W.2d at 178–79. The non-accomplice evidence
need not connect the accused with every element of the offense. Vasquez, 56 S.W.3d
at 48. Hence, we conclude that the non-accomplice evidence is sufficient to connect
appellant with the commission of the offense and support the conviction.
          Accordingly, we overrule appellant’s sole issue.
 
 
 
CONCLUSION
We affirm the judgment of the trial court. 
 
 

                                                   Laura Carter Higley
                                                   Justice
 
 
Panel consists of Justices Taft, Alcala, and Higley.
Do not publish. Tex. R. App. P. 47.2(b).