NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 210376-U

NO. 4-21-0376

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 13, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Morgan County |
| NELSON A. YOUNG, | ) | No. 15CF136 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | David R. Cherry, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court.
Presiding Justice Knecht and Justice Holder White[1] concurred in the judgment.

**ORDER**

¶ 1     *Held*: The appellate court affirmed, concluding (1) the trial court properly dismissed the defendant's successive postconviction petition and (2) postconviction counsel provided reasonable assistance.

¶ 2     In July 2006, a jury found defendant, Nelson A. Young, guilty of first degree murder, and the trial court later sentenced him to 40 years in prison. Thereafter, defendant brought unsuccessful challenges to his conviction.

¶ 3     In October 2019, defendant, through counsel, filed an amended successive petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 to 122-7

---

[1] Justice Lisa Holder White participated in this appeal, but has since been appointed to the Illinois Supreme Court. Our supreme court has held that the departure of a judge prior to the filing date will not affect the validity of a decision so long as the remaining two judges concur. *Proctor v. Upjohn Co.*, 175 Ill. 2d 394, 396 (1997).

(West 2018)). In June 2021, the trial court conducted a hearing on the State's motion to dismiss defendant's petition and granted that motion.

¶ 4 Defendant appeals, arguing that the trial court erroneously dismissed his successive petition because he made a substantial showing that his trial counsel was ineffective for failing to renew his motion for a fitness hearing despite the existence of a *bona fide* doubt as to defendant's fitness for trial. The State responds that defendant (1) forfeited his ineffective assistance claim by failing to raise it on direct appeal or in a previous postconviction proceeding and (2) has not demonstrated either cause for this failure or prejudice resulting therefrom.

¶ 5 Defendant argues, in the alternative, that his postconviction counsel did not provide him with reasonable assistance because counsel failed to attach adequate supporting documentation to the amended petition. Specifically, defendant contends postconviction counsel failed to attach the April 6, 2006, letter, which was purportedly authored by a "forensic psychiatrist," stating defendant was unfit for trial. The State argues that postconviction counsel's decision not to attach the letter did not render his performance unreasonable.

¶ 6 We agree with the State that defendant both (1) failed to demonstrate cause and prejudice for his failure to raise his claims on direct appeal or in his initial postconviction petition and (2) received reasonable assistance from postconviction counsel. Accordingly, we affirm the trial court's judgment.

¶ 7 I. BACKGROUND

¶ 8 This court has previously discussed the underlying facts of this case. See *People v. Young*, 2017 IL App (4th) 150575-U; *People v. Young*, No. 4-09-0486 (Apr. 18, 2011) (unpublished order under Illinois Supreme Court Rule 23); *People v. Young*, 381 Ill. App. 3d 595

- 2 -

(2008). Accordingly, we discuss only those facts necessary to resolve the issues presented in this appeal.

¶ 9                              A. The Fitness Proceedings

¶ 10          In July 2005, the State charged defendant with first degree murder, alleging he stabbed Eva Mae Davis, killing her, knowing this act created a strong probability of death or great bodily harm. See 720 ILCS 5/9-1(a)(2) (West 2004).

¶ 11          In October 2005, upon defense counsel's motion, the trial court ordered defendant to undergo a fitness examination. Dr. Terry Killian examined defendant and thereafter prepared a report containing his findings. According to Killian, defendant reported experiencing auditory hallucinations, severe depression, and suicidal ideation. Killian noted defendant had been prescribed several medications after being seen by a physician in the Morgan County jail, including Lexapro, Trazodone, and Vistarul. Killian diagnosed defendant with (1) depressive disorder, not otherwise specified; (2) psychotic disorder, not otherwise specified (mild); and (3) polysubstance dependence (chronic). Killian concluded defendant was "marginally" unfit to stand trial, but with treatment, it was likely defendant could be returned to fitness. Killian recommended defendant be transferred to McFarland Mental Health Center (McFarland) for a "brief hospitalization" to return him to fitness.

¶ 12          Following a December 2005 hearing, the trial court found defendant unfit to stand trial and ordered that he be transferred to the custody of the Department of Human Services (DHS) for treatment. Defendant was transferred to the Chester Mental Health Center (Chester) in December 2005 where he stayed for two weeks before being transferred to McFarland.

¶ 13          In January 2006, McFarland staff prepared a treatment plan in which the staff noted defendant's psychotic symptoms, hallucinations, and depression were an "active high"

- 3 -

problem requiring stabilization. The treatment plan also included "objectives" for defendant to meet, including an understanding of the legal proceedings against him and the ability to cooperate with his attorney and assist with his defense.

¶ 14        One day after the treatment plan was prepared, defendant was evaluated by clinical psychologist Dr. Tyrone Hollerauer, who prepared a report containing his findings. According to Hollerauer, defendant had no documented history of mental illness or treatment prior to his arrest. Hollerauer found defendant had no symptoms of depression other than beginning to cry when speaking about the events leading to the criminal charges against him. Hollerauer found no evidence defendant was "actively hallucinating" and did "not appear delusional."

¶ 15        Hollerauer opined defendant was "using the threat of suicide to manipulate the system." Hollerauer ultimately concluded defendant (1) had "sufficient knowledge about the court system" as it pertained to his case, (2) understood "the role functions of the court officers," (3) was "able to cooperate with [h]is counsel in his defense," and (4) was therefore fit to stand trial. Shortly thereafter, defendant was transferred back to the Morgan County jail.

¶ 16        In February 2006, Killian reevaluated defendant and filed a report with the court. During the evaluation, defendant reported taking two pills in the morning and two at night but did not know what the medications were. Defendant additionally reported experiencing auditory hallucinations three times per week. Killian opined defendant's symptoms were similar to those reported when he had last evaluated defendant. Killian noted there was evidence defendant was "malingering" in order to avoid going to trial but still believed defendant had some "mild psychotic symptoms." Killian concluded that defendant was "marginally fit to stand trial" because, despite his depressive symptoms and some agitation, he understood his situation

"adequately" and was "able to assist his attorney in his own defense." Killian further recommended defendant be referred to the Morgan County jail psychiatrist for treatment of his auditory hallucinations and depression.

¶ 17 Following a March 2006 fitness hearing, the trial court agreed with Killian's conclusions and found defendant was fit for trial.

¶ 18 Later in March 2006, defendant attempted suicide in the Morgan County jail. Shortly thereafter, defense counsel filed a written motion requesting defendant be hospitalized. Attached to the motion was a statement from Dr. Suresh Sarma, a psychiatrist at the jail. Sarma believed defendant posed an imminent risk for suicide, was not able to be treated for his conditions in the jail, and needed treatment at a psychiatric facility. Following an April 6, 2006, hearing on defendant's motion, the trial court entered a written order (1) finding defendant needed medical treatment and (2) ordering that he be transferred to DHS custody and taken to Chester.

¶ 19 Also on April 6, 2006, a letter, purportedly written by a "forensic psychiatrist" but containing no legible signature, was filed with the trial court. According to the letter, its author had examined defendant and found him to be "psychotic" due to auditory and visual hallucinations. The author also stated defendant was "paranoid" and believed someone was going to kill him. The author additionally found defendant suffered from suicidal ideation and major depressive disorder. In conclusion, the author recommended defendant be treated at Chester rather than McFarland. The author also noted defendant would then begin a regimen of 100 milligrams of Seroquel at night and 10 milligrams of Lexapro in the morning, to be given under direct supervision of personnel to prevent hoarding.

¶ 20    On April 20, 2006, the trial court entered a written order stating it had been informed by the assistant state's attorney and defense counsel that DHS refused to treat defendant. It further noted the Morgan County jail had made "certain accommodations to provide for the Defendant." Accordingly, the court vacated its April 6, 2006, order transferring defendant to DHS.

¶ 21    B. The Trial and Postconviction Proceedings

¶ 22    In July 2006, a jury found defendant guilty of first degree murder. Shortly thereafter, the trial court sentenced defendant to 40 years in prison. On direct appeal, this court affirmed defendant's conviction. *Young*, 381 Ill. App. 3d at 595.

¶ 23    1. *The Initial Petition*

¶ 24    In April 2009, defendant *pro se* filed a petition for relief under the Act, alleging his defense counsel was ineffective based on his trial strategy, including counsel's (1) decisions regarding the presentation of or objection to evidence and (2) failure to pursue defenses other than accident, such as self-defense or intoxication. The trial court dismissed the petition as frivolous and patently without merit, and this court affirmed. *People v. Young*, No. 4-09-0486 (Apr. 18, 2011) (unpublished order under Illinois Supreme Court Rule 23) (holding defendant "failed to state the gist of a constitutional claim of ineffective assistance of counsel based on trial strategy, given that [his] testimony in effect locked trial counsel into the defense of accident").

¶ 25    2. *The Successive Petition*

¶ 26    In October 2014, defendant *pro se* filed a document titled "Petitioner's Motion/Request For A Fitness Hearing Pursuant To 735 ILCS 5/2-1401(F), Namely, a Relief Of Judgment Petition." In his *pro se* pleading, defendant alleged his trial counsel was ineffective for failing to apprise the trial court of facts showing he was unfit for trial. Specifically, defendant

argued he was unable to understand the proceedings and assist in his own defense due to the side effects of his prescribed psychotropic medications and his low intelligence quotient (IQ) level of "1.2," which made him "mildly retarded." Defendant also argued he was denied due process based on his unfitness at the time of trial and requested the court order a fitness examination to determine whether he was fit at the time of trial.

¶ 27        After 90 days, the trial court entered a written order stating it would characterize defendant's pleading as a postconviction petition and docketed it for further proceedings. The State filed a motion to dismiss, which the trial court granted in March 2015.

¶ 28        Defendant appealed, arguing he was entitled to remand because the trial court failed to admonish him before recharacterizing his petition in violation of the Illinois Supreme Court's holding in *People v. Pearson*, 216 Ill. 2d 58 (2005). Defendant also argued, for the first time on appeal, he was entitled to additional sentencing credit. This court agreed defendant was entitled to remand for compliance with *Pearson* but found it lacked jurisdiction to consider his sentencing credit claim. *Young*, 2017 IL App (4th) 150575-U, ¶ 1.

¶ 29        Defendant filed a petition for leave to appeal to the supreme court, arguing that because his sentencing credit claim was not procedurally defaulted, this court erred when it concluded it lacked jurisdiction to consider it. *People v. Young*, 2018 IL 122598, ¶ 25. The supreme court allowed defendant's petition and remanded for the trial court to consider whether defendant was entitled to sentencing credit. *Id.* ¶ 34.

¶ 30                            3. *The Proceedings on Remand*

¶ 31        On remand, defendant appeared in court with his trial counsel, Thomas Piper. At the beginning of the hearing, Piper informed the trial court of a potential conflict regarding his representation of defendant based on defendant's *pro se* allegations of ineffective assistance of

counsel. The State then conceded defendant was entitled to 183 days' sentencing credit. The court awarded defendant the sentencing credit and appointed Elliott Turpin to represent him in further proceedings.

¶ 32　　　　In May 2019, the trial court conducted a hearing at which defendant was admonished regarding the trial court's recharacterization of defendant's petition as one for postconviction relief pursuant to *Pearson*. The court also allowed Turpin additional time to file an amended postconviction petition.

¶ 33　　　　In October 2019, Turpin filed an amended postconviction petition, alleging that Piper was ineffective for failing to request a fitness hearing after defendant's March 2006 suicide attempt. The amended petition further asserted that, based on the evidence in the record, (1) there was a *bona fide* doubt as to defendant's fitness for trial and (2) had counsel requested a hearing, the trial court would have found defendant unfit. The amended petition also claimed defendant had demonstrated cause for his failure to raise his ineffective assistance claim in his initial petition because defendant, due to his low IQ and the side effects of his medications, was unable to understand the nature of his unfitness and its effect on the trial process at the time he brought the initial petition. See 725 ILCS 5/122-1(f) (West 2018) (stating only one petition may be filed without leave of the court and leave may be granted "only if a petitioner demonstrates cause for his or her failure to bring the claim in his *** initial post-conviction proceedings and prejudice results from that failure"). Defendant's affidavit was attached in support of the amended petition.

¶ 34　　　　In November 2019, the State filed a motion to dismiss defendant's amended petition, arguing that (1) defendant's claim was forfeited and (2) defendant's low IQ and use of psychotropic medications did not constitute sufficient cause for his failure to raise his ineffective assistance claim in his initial petition. The State further argued that even if defendant had

demonstrated cause, he nonetheless failed to show that (1) Piper's performance fell below an objective standard of reasonableness or (2) that defendant was prejudiced.

¶ 35 Also in November 2019, defendant *pro se* filed a handwritten "supplemental petition." In the supplemental petition, defendant argued he was entitled to day-for-day sentencing credit and would not be required to serve 100% of his sentence. At a December 2019 hearing, defendant clarified the supplemental petition had been drafted by someone else and he did not fully understand its contents. After consulting with defendant, Turpin informed the trial court he planned to incorporate this issue into the amended petition. However, after Turpin mailed the proposed amended petition to defendant, defendant returned the petition and stated he did not agree with the amendment.

¶ 36 In July 2020, the trial court conducted a hearing on the State's motion to dismiss. During the hearing, defendant explained he did not "really understand" the day-for-day sentencing credit issue raised in his "supplemental petition." The proceedings were continued to June 2021.

¶ 37 In June 2021, the trial court granted the State's motion to dismiss defendant's petition. The court first explained defendant was not entitled to day-for-day sentencing credit as a matter of law. When prompted by Turpin regarding the court's ruling on the ineffective assistance of counsel issue, the court stated it denied the petition in that regard also.

¶ 38 On that same date, Turpin filed a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017), stating he had (1) consulted with defendant in person, by phone, and by mail to ascertain his constitutional claims; (2) examined the trial court file and reports of proceedings; and (3) made any amendments to the *pro se* petition that were necessary for the adequate presentation of defendant's claims.

¶ 39        This appeal followed.

¶ 40                            II. ANALYSIS

¶ 41        On appeal, defendant argues he is entitled to remand because he made a

substantial showing that his right to the effective assistance of his trial counsel was violated. The

State responds that defendant (1) forfeited his ineffective assistance claim by failing to raise it on

direct appeal or in a previous postconviction proceeding and (2) has not demonstrated either

cause for this failure or prejudice resulting therefrom.

¶ 42        Alternatively, defendant argues that his postconviction counsel did not provide

him with reasonable assistance because he failed to attach adequate supporting documentation to

the amended petition. Specifically, defendant argues that postconviction counsel failed to attach

the April 6, 2006, letter, which was purportedly authored by a "forensic psychiatrist," stating

defendant was unfit for trial. The State argues postconviction counsel's decision not to attach the

letter did not render his performance unreasonable.

¶ 43        We agree with the State that defendant both (1) failed to demonstrate cause and

prejudice for his failure to raise his claims on direct appeal or in his initial postconviction

petition and (2) received reasonable assistance from postconviction counsel. Accordingly, we

affirm the trial court's judgment.

¶ 44                    A. Successive Postconviction Proceedings

¶ 45                            1. *The Applicable Law*

¶ 46        The Post-Conviction Hearing Act (725 ILCS 5/122-1 to 122-7 (West 2018))

allows a criminal defendant to challenge the proceedings leading to his conviction based on a

deprivation of his constitutional rights. The Act contemplates the filing of only one

postconviction petition without leave of the court. *Id.* § 122-1(f). The trial court should grant

leave to file a successive petition if the defendant demonstrates "cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure." *Id.* It is the defendant's burden to obtain leave of court before a successive postconviction petition may be filed. *People v. Tidwell*, 236 Ill. 2d 150, 157 (2010).

¶ 47 Under the Act, "cause" is demonstrated if a defendant identifies "an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings." 725 ILCS 5/122-1(f) (West 2018). Prejudice is established "by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." *Id.* A defendant must establish both cause and prejudice. *People v. Sutherland*, 2013 IL App (1st) 113072, ¶ 16.

¶ 48 At the second stage of proceedings, the State has the "opportunity to seek dismissal of the petition on any grounds, including the defendant's failure to prove cause and prejudice for not having raised the claims in the initial postconviction petition." *People v. Bailey*, 2017 IL 121450, ¶ 26. We review the second-stage dismissal of a postconviction petition *de novo*. *People v. Johnson*, 2019 IL App (1st) 153204, ¶ 33.

¶ 49 The procedural posture of this case is unusual. Defendant's original pleading was styled as a petition for relief from judgment and contained neither a request for leave to file a successive postconviction petition nor facts pertaining to cause and prejudice. The trial court noted on remand that defendant's petition—when recharacterized as one for postconviction relief—was a successive postconviction petition requiring leave of court to be filed. After admonishing defendant of its recharacterization, the court appointed Turpin to represent defendant and advised that Turpin could amend the pleading to plead cause and prejudice, which Turpin did.

¶ 50 In the State's motion to dismiss defendant's successive petition, the State acknowledged that the trial court implicitly granted defendant leave to file the successive petition by appointing counsel and thereby advancing the petition to the second stage of proceedings. Nonetheless, the State asserted that (1) defendant's ineffective assistance of claim was forfeited because he did not present it in his initial postconviction petition and (2) he failed to satisfy the cause and prejudice test. The trial court granted the State's motion to dismiss defendant's successive petition but made no finding regarding whether defendant established cause and prejudice.

¶ 51 As stated earlier, the State can seek dismissal based on a defendant's failure to establish cause and prejudice at the motion to dismiss stage, as it did here. Accordingly, we will review whether defendant established cause and prejudice for his claim that trial counsel was ineffective for failing to request an additional fitness hearing.

¶ 52 2. *Defendant's Claim Is Forfeited and He Failed To Demonstrate Cause and Prejudice*

¶ 53 We agree with the State that dismissal of defendant's successive postconviction petition was proper because (1) his ineffective assistance claim was forfeited and (2) he failed to satisfy the cause and prejudice test.

¶ 54 a. Forfeiture

¶ 55 First, defendant forfeited his ineffective assistance claim by failing to raise it on direct appeal or in a prior proceeding. See 725 ILCS 5/122-3 (West 2018) (stating constitutional claims not raised in the original or amended petition are forfeited). On direct appeal, defendant raised a claim of ineffective assistance of counsel but failed to raise the specific claim he now asserts in his successive postconviction petition—namely, his trial counsel was ineffective for

- 12 -

failing to request an additional fitness hearing prior to trial. Defendant also failed to raise this claim in his initial *pro se* postconviction petition.

¶ 56    Defendant responds that his claim is not forfeited because it depends on matters outside the record and therefore could not have been raised on direct appeal or in a postconviction proceeding. Specifically, defendant contends that his claim of ineffective assistance of trial counsel could not have been raised in an earlier proceeding because the record contained no evidence—prior to the filing of defendant's affidavit stating he was suffering from a "low I.Q." and was taking psychotropic medication at the time of his trial—which would have supported that claim. See *People v. Youngblood*, 389 Ill. App. 3d 209, 214 (2009) ("[T]hus, a postconviction claim that depends on matters outside the record is not ordinarily forfeited, because matters outside the record may not be raised on direct appeal."); see also *People v. Blair*, 215 Ill. 2d 427, 450-51 (2005) (stating rules of forfeiture may be relaxed "where facts relating to the claim do not appear on the face of the original appellate record").

¶ 57    We are not persuaded by defendant's contention, but even assuming for the sake of argument defendant's claim is not forfeited because some of the facts upon which his petition relies do not appear on the face of the record, we conclude the trial court's dismissal of defendant's petition was proper because he failed to demonstrate cause and prejudice.

¶ 58                    b. Cause and Prejudice

¶ 59                         i. *Cause*

¶ 60    As earlier stated, in order to obtain leave to file a successive postconviction petition, defendant was required to show cause, *i.e.*, an objective factor external to his defense that impeded his ability to raise his claim in earlier proceedings. 725 ILCS 5/122-1(f) (West 2018). In his reply brief, defendant asserts he demonstrated cause because his low IQ and use of

psychotropic medications prevented him from fully understanding the legal proceedings and raising the issues he now advances in his successive petition. We disagree.

¶ 61　　　　We agree with the State that defendant's low IQ and ingestion of psychotropic medication did not constitute sufficient cause for his failure to raise his claim in his initial postconviction proceeding. First, neither a low IQ (see *People v. Perkins*, 53 Ill. App. 3d 412, 415 (1977)) nor the ingestion of psychotropic medication (725 ILCS 5/104-21 (West 2006)) alone are sufficient to establish defendant was unfit at the time of trial. Additionally, defendant does not offer any specific details regarding his mental condition during his trial, appeal, or initial postconviction proceeding that explain how his medication and IQ affected his ability to understand the proceedings and assist in his defense; he does not even identify in the petition itself which medications he was taking during this time. See, *e.g.*, *People v. Maclin*, 2021 IL App (1st) 172254, ¶ 15 ("In the absence of specific and objective information as to the nature of [the defendant's] mental illness during the relevant time period that would have prevented him from raising this claim in an earlier proceeding, we cannot conclude that the defendant has shown cause."). Moreover, defendant failed to explain how he was able to raise a different ineffective assistance of counsel claim in his initial postconviction proceeding but not the one at issue here, raised for the first time in his successive petition. See *Young*, No. 4-09-0486 (Apr. 18, 2011) (unpublished order under Illinois Supreme Court Rule 23); see also *Maclin*, 2021 IL App (1st) 172254, ¶ 16.

¶ 62　　　　　　　　　　　　ii. *Prejudice*

¶ 63　　　　Additionally—and notwithstanding that defendant's failure to demonstrate cause, alone, is fatal to his petition—defendant also has not demonstrated trial counsel's alleged

- 14 -

ineffective assistance "so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122-1(f) (West 2018).

¶ 64　　　　Here, defendant argues his trial counsel was ineffective for failing to request a hearing to determine his fitness for trial. To establish a claim of ineffective assistance of counsel, defendant must satisfy the familiar *Strickland* standard. *People v. Veach*, 2017 IL 120649, ¶ 29. "Specifically, a defendant must show that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *Id.* ¶ 30. Accordingly, to establish that his trial counsel's alleged incompetency prejudiced him within the meaning of *Strickland*, defendant was required to show "facts existed at the time of his trial which raised a *bona fide* doubt of his ability to understand the nature and purpose of the proceedings and to assist in his defense." *People v. Eddmonds*, 143 Ill. 2d 501, 512-13 (1991).

¶ 65　　　　In *People v. Brown*, 236 Ill. 2d 175, 186-87 (2010), the supreme court explained the procedure for determining a criminal defendant's fitness for trial as follows:

> "Due process bars the prosecution of an unfit defendant. [Citation.] A defendant is unfit to stand trial if, due to a mental or physical condition, he or she is unable to understand the nature and purpose of the proceedings or to assist in the defense. [Citation.] The trial court must order a fitness hearing if a *bona fide* doubt is raised of the defendant's fitness. [Citation.] A number of factors may be considered in assessing whether a *bona fide* doubt of fitness is raised, including a defendant's irrational behavior, demeanor at trial, any prior medical opinion on

- 15 -

the defendant's competence, and any representations by defense counsel on the defendant's competence. [Citation.]"

However, "a defendant may be fit for trial although his or her mind may be otherwise unsound," and "[t]he fact that a defendant suffers from mental disturbances or requires psychiatric treatment does not necessarily raise a *bona fide* doubt as to the defendant's" fitness for trial. *People v. Easley*, 192 Ill. 2d 307, 322 (2000).

¶ 66          In this case, defendant has not shown that trial counsel's failure to request a fitness hearing so infected the proceedings that his conviction violated due process. First, we agree with the State that the record does not support a determination that facts existed *at the time of trial* indicating a *bona fide* doubt regarding defendant's fitness. Defendant testified in his own defense at trial, and nothing in his testimony indicates he did not understand the proceedings against him or that he was unable to meaningfully assist in his defense. Defendant's behavior at trial was at all times rational and therefore rebuts his claim that he was unfit.

¶ 67          Additionally, (1) Killian previously found defendant fit for trial and (2) despite Sarma's recommendation defendant be treated at a hospital following his suicide attempt, Sarma did not specifically opine that defendant was unfit at that time—which we note was more than three months *before* defendant's trial. Furthermore, multiple health professionals expressed their belief defendant was "malingering" in order to delay or avoid going to trial. Based on these factors, we conclude defendant failed to show that facts existed at the time of trial indicating he was unfit. Accordingly, any claim of ineffective assistance premised on trial counsel's failure to raise the issue of defendant's fitness did not prejudice him.

¶ 68          B. Reasonable Assistance of Postconviction Counsel

¶ 69          Defendant next argues he is entitled to remand because his postconviction counsel, Turpin, failed to provide him with reasonable assistance. Specifically, defendant argues Turpin failed to attach to defendant's petition the April 6, 2006, letter stating he was unfit for trial, which, defendant alleges, was essential for the adequate presentation of defendant's ineffective assistance of trial counsel claim. Therefore, defendant contends, Turpin failed to comply with Rule 651(c).

¶ 70          "Because the right to counsel in postconviction proceedings is wholly statutory, postconviction petitioners are entitled only to the level of assistance provided by the Act." *People v. Jennings*, 345 Ill. App. 3d 265, 271 (2003). The Illinois Supreme Court has determined that the Act requires appointed counsel to provide only "reasonable" assistance, a lower standard than that which the constitution requires at trial. *People v. Kuehner*, 2015 IL 117695, ¶ 15. To ensure a reasonable level of assistance, Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) requires that postconviction counsel file a certificate with the court showing counsel (1) consulted with the defendant to ascertain his or her contentions of deprivation of constitutional rights, (2) examined the trial court records, and (3) has made any amendments to the defendant's *pro se* petition that are "necessary for an adequate presentation of petitioner's contentions."

¶ 71          Counsel's filing of a Rule 651(c) certificate gives rise to a rebuttable presumption that postconviction counsel provided reasonable assistance. *People v. Blanchard*, 2015 IL App (1st) 132281, ¶ 16. Because Turpin filed a facially valid Rule 651(c) certificate in this case, we presume defendant received the representation required by the rule. We note it is defendant's burden to overcome this presumption by demonstrating Turpin's failure to substantially comply with Rule 651(c). *Id.*

¶ 72    In *People v. Custer*, 2019 IL 123339, ¶ 38, the supreme court explained that "Rule 651(c) requires only that postconviction counsel certify having undertaken the limited actions prescribed." Further, "[t]hose requirements do not include bolstering every claim presented in a petitioner's *pro se* postconviction petition, regardless of its legal merit, or presenting each and every witness or shred of evidence the petitioner believes could potentially support his position." *Id.*

¶ 73    We conclude that defendant has not rebutted the presumption Turpin complied with Rule 651(c) when he did not attach the April 6, 2006, letter to defendant's petition. First, Turpin attached defendant's affidavit to the petition, which corroborated defendant's *pro se* contentions regarding his "low I.Q." and psychotropic medications. Turpin also attached portions of the reports of proceedings to the petition, including the trial court's initial finding of unfitness in December 2005 and Sarma's March 2006 request for hospitalization. We note defendant's initial *pro se* petition did not refer to the letter or rely on it as the basis for his contention he was unfit at the time of trial.

¶ 74    In addition, we agree with the State that the April 6, 2006, letter had little probative value because (1) it is not clear who authored it and (2) the report did not comply with the fitness examination requirements in section 104-13 of the Code of Criminal Procedure of 1963 (725 ILCS 5/104-13 (West 2006)). Inclusion of the letter was simply not necessary for an adequate presentation of defendant's claim. Turpin attached adequate documentation to support defendant's contentions, and his decision not to attach the April 6, 2006, letter does not rebut the presumption he complied with Rule 651(c). Accordingly, we conclude defendant was not denied reasonable assistance of postconviction counsel.

¶ 75                                III. CONCLUSION

- 18 -

¶ 76         For the reasons stated, consistent with Illinois Supreme Court Rule 23(b) (eff. Jan. 1, 2021), we affirm the trial court's judgment.

¶ 77         Affirmed.